THE UNITED STATES DISTRICT COURT
FOR
THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| James Davis Bennett, | ) | CASE NO.: 1:07-cv-01321 |
| | ) | |
| Plaintiff, | ) | The Hon. Colleen Kollar-Kotelly |
| | ) | |
| vs. | ) | Affidavit in support of and Motion |
| | ) | for an Order Granting Plaintiff's |
| James M. Crawford, et al., | ) | FRCVP Rule 56 and Denying Defendant's |
| | ) | Motion to Dismiss. |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

RECEIVED

OCT 1 7 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**THE UNITED STATES DISTRICT COURT**
**FOR**
**THE DISTRICT OF COLUMBIA**

James Davis Bennett,       )  **CASE NO.: 1:07-cv-01321**
                              )
        Plaintiff,      )  **The Hon. Colleen Kollar-Kotelly**
                              )
vs.                    )  **Affidavit in support of and Motion**
                              )  **for an Order Granting Plaintiff's**
James M. Crawford, et al.,    )  **FRCVP Rule 56 and Denying Defendant's**
                              )  **Motion to Dismiss.**
        Defendants.     )
                              )
_____)

## TABLE OF CONTENTS           PAGE(S)

Table of Authorities......................................iii

Affidavit..................................................1

Verification...............................................3

Statement of Genuine Issues/Introduction...................3

Arguments..................................................3

Conclusion................................................10

## TABLE OF AUTHORITIES                         PAGE(S)

CONSTITUTIONAL LAWS:

-Fifth Amendment.......................................3,4

-Article III, Section 1...............................6

-Article III, Section 2...............................7

STATUTORY LAWS:

-28 USC § 1346........................................7

FEDERAL RULES:

-FRCVP Rule 56......................................2,3,9,10

-FRCVP Rule 26........................................2

-FRCVP Rule 36........................................2

-FRCVP Rule 12......................................6,8,9

-FRCVP Rule 8.........................................8

LOCAL RULES:

-Rule 7.............................................3,9,10

CASE LAW:

-Ex Parte Bain, 7 S.ct 781............................4

-Stirone v. US, 80 S.ct 270..........................4

-Bein v. Heath, 12 L.ed 416..........................5

-Keystone Driller v. General Excavator, 78 L.ed 293......5

-Hazel-Atlas Co. v. Hartford Co., 88 L.ed 1250,1255......5

-Bivens v. Six Unknown Agents........................7

-Fox v. Strickland, 837 F2d at 509...................9

-Neal v. Kelly, 963 F2d at 455.......................9

-Heck v. Humphrey, 129 L.ed 2d at 393 & 394.............11

-In Re Watkins, 7 L.ed 650...........................11

## THE UNITED STATES DISTRICT COURT
### FOR
### THE DISTRICT OF COLUMBIA

James Davis Bennett,                )   CASE NO. : 1:07-cv-01321
                                    )
          Plaintiff,                )   The Hon. Colleen Kollar-Kotelly
                                    )
vs.                                 )   Affidavit in support of and Motion
                                    )   for an Order Granting Plaintiff's
James M. Crawford, et al.,          )   FRCVP Rule 56 and Denying defendant's
                                    )   Motion to Dismiss.
          Defendants.               )
                                    )
_____       )

### AFFIDAVIT

The Grand Jury never issued the indictment that the

Government used to initiate prosecution against the Plaintiff.

The Plaintiff warned the Court that the Government was

using fraud to present un-indicted charges to the Jury when he

requested to use private attorney not associated with the court

or the Government.

After being convicted on undisclosed un-indicted charges the

Plaintiff requested the court identify the charges supporting

sentence, disclose the related Grand Jury indictment, and

disclose the associated verdict forms.

The court refused then sentenced Plaintiff to 121 months in

prison, and Plaintiff brought the instant complaint for monetary

-1-

compensation.

Plaintiff filed for FRCVP Rule 56 for summary judgment and alleged that on appeal the circuit court struck his opening brief and appointed another appointed attorney to re-write it while the Government was defaulting by not filing a response brief.

In addition, the Plaintiff attempted to file FRCVP Rule 26 Motion for production of the three Grand Jury indictments that match the charges presented to the jury and or any Grand Jury indictment which was authorized with a foreperson's signature. The FRCVP Rule 26 also contained a request for Admissions pursuant to Rule 36; neither were ever filed by the court clerk.

In order to obtain the authorized indictments the Plaintiff filed a Freedom of Information Act request and when the Government failed to respond as required he filed a Writ of Mandamus to direct the Government disclose any authorized indictments. The court clerk never filed the Mandamus.

All documents mentioned herein are needed to support Plaintiff's request for an order granting his FRCVP Rule 56 request and an order denying Defendant's Motion to Dismiss.

## VERIFICATION

I James Davis Bennett do verify the above statements are

true and correct to the best of my rememberance.

Signed: _____
James Davis Bennett

Dated: _10·11·07_____

## STATEMENT OF GENUINE ISSUES/INTRODUCTION

In deciding the Government's motion to dismiss the court faces

the following issue:

> The Fifth exclusive makes indictment through Grand
> Jury the exclusive means of criminal prosecution
> because it lowers the possibility of trials on charges
> that are unfair and fraudulent. The Government
> circumvented the Grand Jury to falsely imprison
> the Plaintiff and when the Plaintiff attempted to get
> monetary compensation via civil suit and summary judgment
> the Government used matters outside the complaint
> to justify an affirmative defense of Res Judicata.
> **SHOULD THE GOVERNMENT BE ALLOWED TO DEPRIVE THE PLAINTIFF
> OF HIS RIGHT TO BE CHARGED BY A GRAND JURY, USE IT IN A
> DEFENSE PRESENTING MATTERS OUTSIDE THE PLEADINGS WITHOUT
> CONVERSION TO A FRCVP RULE 56?**

### ARGUMENTS

**a. The criminal judgment and any other judgment supported by it**

**is void and is unsupportable because the Government intentionally**

**circumvented the Plaintiff's Fifth Amendment right through fraud.**

No Person shall be held to answer for a capital, or otherwise

infamous crime, unless on a presentment or Indictment of a Grand

Jury. The Fifth Amendment.

The Grand Jury came to be regarded as an institution by which the subject was rendered secured against oppression from unfounded prosecution. Ex Parte Bain, 7 S ct 781.

The Court cannot permit a defendant to be tried on charges that are not made in the indictment against him. Stirone v. U.S. 80 S ct 270.

The Government created three unauthorized indictments and tried the Plaintiff on one. Exhibit A. Prior to trial the Plaintiff informed the court that the Government was falsifying charges and that the court's appointed attorney was doing nothing about it. Exhibit B.

During trial the Government brings in additional counts that don't appear on their self created indictment and the Government, the court, and the court appointed attorney discuss un-charged counts and the violations of law that are to apply to each. Exhibit C.

During sentencing the Plaintiff requested the court disclose the Grand Jury Indictment, all charges presented to the Petit Jury,

and all verdict forms used. The court refused. Exhibit D.

The guiding doctrine in this case is the equitable maxim that "he who comes into equity must come with clean hands". That doctrine is rooted in the historical concept of the court of equity being a vehicle for affirmatively enforcing the requirements of conscience and good faith. This presupposes a refusal on the court's part to be "the abetter of iniquity". Bein v. Heath, 12 L.Ed. 416.

The clean hands doctrine gives wide range to the court's use of discretion in refusing to aid the unclean litigant. It is "not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion". Keystone Driller v. General Excavator, 78 L.Ed. 293.

Setting aside a judgment to permit a new trial, altering the terms of the judgment, or **restraining the beneficiaries of the JUDGMENT from taking any benefit whatever from it are the usual forms of relief which have been granted through the clean hands doctrine.** Hazel-Atlas Co. v Hartford Co., 88 L Ed 1250, 1255.

The Government's hands are soiled with fraudulent indictments, trial on un-charged counts, and intentional criminal cover-up at sentencing and beyond. See Exhibits A-E.

-5-

If the Government continues to refuse to make full disclosure then they have failed to meet their burden of supporting their Res Judicata Affirmative Defense and have failed to contravene the Plaintiff's allegations of fraud. Therefore, the Clean Hands Doctrine bars relief through any defense available to the Government.

**b. The Government's request for dismissal pursuant to FRCVP Rule 12(b)(1) "for lack of jurisdiction over the subject matter" is not logically structured in common sense or law. Having exposed that defense leaves them with their FRCVP Rule 12(b)(6) Motion resting on the Doctrine of Res Judicata which refers to a case not mentioned in the pleadings and therefore must be converted to a FRCVP Rule 56 with Judgment for the Plaintiff Pursuant to Local Rule 7(b).**

**Subject Matter Jurisdiction** is the Power to hear a certain type of case and the Power to grant the specified relief. Black's Law Dictionary 8th Edition.

The District Court's judicial Power derives from Article III, Section 1 of the Federal Constitution.

The District Court's Judicial Power extends to all cases arising

Under the Constitution and Laws of the United States in Controversies involving the United States. Article III, Section 2, Federal Constitution.

The caption in the instant case makes clear that subject matter jurisdiction is "Pursuant to Bivens vs Six Unknown Agents, The United States Constitution, and Title 28, United States Codes, Section 1346". Equally clear is the Defendant's contradictory request to the court asking it to view the instant action as identical to the prior action in "Bennett 1". They then ask the court to uphold the jurisdiction of the court issuing the judgment in "Bennett I" while at the same time asking for dismissal based on the same subject matter jurisdiction. It is irrational for the court to grant jurisdiction to legitimize a judgment in one action for the sole purpose of denying jurisdiction in another action which is alleged to be of the same subject matter. The Constitution only empowers Congress  to legislate subject matter jurisdiction through Article I, Section 1.

The above is a perfect example of the Clean Hands Doctrine as mentioned earlier. It demonstrates the greater propensity towards fraud that will be used by a person who has gotten away with it before.

The Government's only defense would be to produce the Grand

-7-

Jury signed indictments matching all 25 un-charged counts

presented to the Petit Jury and to disclose the 25 related verdict

forms(see Exhibit E for sample verdict form presented by court

appointed attorney who assisted the Government and compare it with

indictment in Exhibit A)

   **Res Judicata** is an Affirmative defense that may be pleaded

[FRCVP Rule 8(c)] or "made by Motion"[FRCVP Rule 12(b)(6)]. The

burden of proving the Defense rest with the Defendant[Black's Law

Dictionary 8th Edition].

   "In order to apply Res Judicata, there must be the existence

of (1) an identity of parties in both suits; (2) a judgment rendered

by a court of competent jurisdiction; (3) a final judgment on the

merits; and (4) an identity of the cause of actions in both suits".

see Defendant's Motion page 5 second paragraph.

   "Motions to dimiss that present matters outside the pleading are

converted to motions for summary judgment". Item #3 Court's Order

filed 8-21-07.

   If motions to dismiss for failure to state a claim present

matters outside the pleadings that are not excluded by the court

the motion shall be treated as a motion for summary judgment

"and disposed of as provided in Rule 56". FRCVP Rule 12(b)(6).

In order for the Plaintiff to fully respond to the Defendant's

Affirmative Defense of Res Judicata of a matter outside these

proceedings it requires conversion of his motion to a motion for

summary judgment and the allowance of time to conduct the associated

discovery. See Fox v. Strickland, 837 F2d at 509 and Neal v. Kelly,

963 F2d at 455.

The only things that can be determined from the Defendant's Motion

is (1)the parties are not the same(Crawford, Kennedy, The United

States, and the State Bar of California were not parties to "Bennett 1"),

(2)"Bennett 1" was not a final judgment on the merits(The Court

Dismissed sua sponte prior to Defendants' answer), and (3)the

cause of actions are different(false imprisonment etc. was not a

part of "Bennett 1"). It may be said that these are the only

the motion shall be treated as a motion for summary judgment

"and disposed of as provided in Rule 56". FRCVP Rule 12(b)(6).

If an opposing party to a motion fails to "serve and file a

memorandum of points and authorities in opposition" in the

time prescribed "the court may treat the motion as conceded".

Local Rule 7(b).

In order for the Plaintiff to fully respond to the Defendant's

Affirmative Defense of Res Judicata of a matter outside these

proceedings it requires conversion of his motion to a motion for

summary judgment and the allowance of time to conduct the associated

discovery. See Fox v. Strickland, 837 F2d at 509 and Neal v. Kelly,

963 F2d at 455.

The only things that can be determined from the Defendant's Motion

is (1)the parties are not the same(Crawford, Kennedy, The United

States, and the State Bar of California were not parties to "Bennett 1"),

(2)"Bennett 1" was not a final judgment on the merits(The Court

Dismissed sua sponte prior to Defendants' answer), and (3)the

cause of actions are different(false imprisonment etc. was not a

part of "Bennett 1"). It may be said that these are the only

things that can be said conclusively regarding the judgment

in "Bennett 1" without further inquiry.

If the court deems it equitable to proceed to convert the

Defendant's Motion to FRCVP Rule 56, the Plaintiff hereby draws

the court's attention to Plaintiff's FRCVP Rule 56 Motion which

was filed without response from the Defendant within the provisions

of Local Rule 7(b) and would thereby request the court "treat the

motion as conceded and would further move the court to order summary

judgment in favor of the Plaintiff on the issues contained therein.

### CONCLUSION

The complaint starts with a proffer to the Government to

reveal the Grand Jury Foreperson signed indictment matching the

"25 un-charged, un-indicted, and un-arraigned counts" used at

trial and in return the Plaintiff will dismiss his criminal

appeal(complaint page 1, paragraph 1). In addition the Plaintiff

is now willing to dismiss all civil actions and sign a waiver

releasing the Government from all liability associated with the

criminal prosecution in exchange for the aforementioned disclosures.

After all it is the Government's Affirmative Defense and they

have the burden of proving its' authenticity if they want the

benefit of escaping trial.

If the Government cannot produce an indictment signed by

a Grand Jury Foreperson matching the 25 un-charged counts presented

to the jury and support it with 25 verdicts unanimous in nature

then it cannot defeat the allegations of fraud and false imprisonment

nor will it be able to use Heck v. Humphrey's Favorable Outcome

Doctrine as an Affirmative Defense because Heck provides two exceptions

for fraud and Fourth Amendment violations and both are present in

the instant complaint(see Heck, 129 Led 2d at 393 footnote#4 and 394

footnote#7). Besides, on May 19, 2006 the court issued a FRCRP Rule

29 acquittal of the count alleging all 25 counts(see Exhibit E-

Sample Verdict Form) presented to the jury. Accordingly Heck's

Favorable Outcome Doctrine no longer applies.

Therefore if the judgment under which the Plaintiff is

imprisoned is a nullity then the officer who obeys it is guilty of

false imprisonment. In Re Watkins, 7 Led 650.

Dated this 11th Day of October 2007,

By: _____
James Davis Bennett/Reg#32589-112
FCI Safford
P.O. Box 9000
Safford, AZ 85548

-11-

## CERTIFICATE OF SERVICE

**CASE NAME:** James Davis Bennett v. James M. Crawford, et al.

**CASE NUMBER:** 1:07-cv-01321

I certify that a copy of the Affidavit in support of and Motion for an Order Granting Plaintiff's FRCVP Rule 56 and Denying Defendant's Motion to Dismiss was served on the parties indicated below in a manner prescribed:

| PARTY SERVED | METHOD OF SERVICE | DATE SERVED |
|---|---|---|
| James M. Crawford<br>528 N. Glassell<br>Orange, Ca.  92867 | US Mail | 10-19-07 |
| Sean Kennedy<br>321 East 2nd Street<br>Los Angeles, Ca. 90012 | US Mail | 10-19-07 |
| California Attorney General<br>1300 "I" Street<br>Sacremento, Ca.  94244-2550 | US Mail | 10-19-07 |
| United States Attorney<br>Attn: Laurie J. Weinstein<br>555 Fourth Str., NW, Rm E4820<br>Washington, DC 20530 | US Mail | 10-15-07 |
| Alicemarie H. Stotler<br>411 W. Fourth Street<br>Santa Ana, Ca.  92701 | US Mail | 10-19-07 |
| Alan J. Taylor<br>1 Woodward Ave. Ste 2400<br>Detroit, MI 48226 | US Mail | 10-19-07 |

James Davis Bennett

Date  10·11·07

## THE UNITED STATES DISTRICT COURT
### FOR
## THE DISTRICT OF COLUMBIA

James Davis Bennett,          )    **CASE NO.: 1:07-cv-01321**
                              )
        Plaintiff,            )    **The Hon. Colleen Kollar-Kotelly**
                              )
vs.                           )    **[Proposed] ORDER**
                              )
James M. Crawford, et al.,    )
                              )
        Defendants.           )
                              )
_____)

1. Having found that the Defendant United States of America

has presented matters outside of the Pleadings and having also

found that they have failed to respond to Plaintiff's Motion

for Summary Judgment as mandated by Local Rule 7(b) it is the

Court's Judgment that the Defendant's FRCVP Rule 12(b)(1) be

denied outright and their FRCVP Rule 12(b)(6) be converted

to FRCVP Rule 56 and Granted in favor of the Plaintiff pursuant to

Local Rule 7(b).


_____          _____
**Hon. Colleen Kollar-Kotelly**                **Dated**

THE UNITED STATES DISTRICT COURT
FOR
THE DISTRICT OF COLUMBIA

James Davis Bennett,              )     CASE NO.: 1:07-cv-01321
                                  )
        Plaintiff,                )     The Hon. Colleen Kollar-Kotelly
                                  )
vs.                               )     Affidavit in support of and Motion
                                  )     for an Order Granting Plaintiff's
James M. Crawford, et al.,        )     FRCVP Rule 56 and Denying Defendant's
                                  )     Motion to Dismiss.
        Defendants.               )
                                  )
_____ )

RECEIVED

OCT 17 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

THE UNITED STATES DISTRICT COURT
FOR
THE DISTRICT OF COLUMBIA

James Davis Bennett,       )   CASE NO.: 1:07-cv-01321
                       )
      Plaintiff,   )   The Hon. Colleen Kollar-Kotelly
                       )
vs.                 )   Affidavit in support of and Motion
                       )   for an Order Granting Plaintiff's
James M. Crawford, et al.,  )   FRCVP Rule 56 and Denying Defendant's
                       )   Motion to Dismiss.
      Defendants.  )
                       )
_____)

## TABLE OF CONTENTS          PAGE(S)

Table of Authorities.......................................iii
Affidavit..................................................1
Verification...............................................3
Statement of Genuine Issues/Introduction...................3
Arguments..................................................3
Conclusion.................................................10

## TABLE OF AUTHORITIES

PAGE(S)

CONSTITUTIONAL LAWS:

   -Fifth Amendment........................................3,4

   -Article III, Section 1..................................6

   -Article III, Section 2..................................7

STATUTORY LAWS:

   -28 USC § 1346...........................................7

FEDERAL RULES:

   -FRCVP Rule 56....................................2,3,9,10

   -FRCVP Rule 26...........................................2

   -FRCVP Rule 36...........................................2

   -FRCVP Rule 12.....................................6,8,9

   -FRCVP Rule 8............................................8

LOCAL RULES:

   -Rule 7...........................................3,9,10

CASE LAW:

   -Ex Parte Bain, 7 S.ct 781...............................4

   -Stirone v. US, 80 S.ct 270..............................4

   -Bein v. Heath, 12 L.ed 416..............................5

   -Keystone Driller v. General Excavator, 78 L.ed 293......5

   -Hazel-Atlas Co. v. Hartford Co., 88 L.ed 1250,1255......5

   -Bivens v. Six Unknown Agents............................7

   -Fox v. Strickland, 837 F2d at 509.......................9

   -Neal v. Kelly, 963 F2d at 455...........................9

   -Heck v. Humphrey, 129 L.ed 2d at 393 & 394.............11

   -In Re Watkins, 7 L.ed 650.............................11

THE UNITED STATES DISTRICT COURT
FOR
THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| James Davis Bennett, | ) | CASE NO. : 1:07-cv-01321 |
| | ) | |
| Plaintiff, | ) | The Hon. Colleen Kollar-Kotelly |
| | ) | |
| vs. | ) | Affidavit in support of and Motion |
| | ) | for an Order Granting Plaintiff's |
| James M. Crawford, et al., | ) | FRCVP Rule 56 and Denying defendant's |
| | ) | Motion to Dismiss. |
| Defendants. | ) | |
| | ) | |
| | ) | |

## AFFIDAVIT

The Grand Jury never issued the indictment that the Government used to initiate prosecution against the Plaintiff.

The Plaintiff warned the Court that the Government was using fraud to present un-indicted charges to the Jury when he requested to use private attorney not associated with the court or the Government.

After being convicted on undisclosed un-indicted charges the Plaintiff requested the court identify the charges supporting sentence, disclose the related Grand Jury indictment, and disclose the associated verdict forms.

The court refused then sentenced Plaintiff to 121 months in prison, and Plaintiff brought the instant complaint for monetary

compensation.

Plaintiff filed for FRCVP Rule 56 for summary judgment and alleged that on appeal the circuit court struck his opening brief and appointed another appointed attorney to re-write it while the Government was defaulting by not filing a response brief.

In addition, the Plaintiff attempted to file FRCVP Rule 26 Motion for production of the three Grand Jury indictments that match the charges presented to the jury and or any Grand Jury indictment which was authorized with a foreperson's signature. The FRCVP Rule 26 also contained a request for Admissions pursuant to Rule 36; neither were ever filed by the court clerk.

In order to obtain the authorized indictments the Plaintiff filed a Freedom of Information Act request and when the Government failed to respond as required he filed a Writ of Mandamus to direct the Government disclose any authorized indictments. The court clerk never filed the Mandamus.

All documents mentioned herein are needed to support Plaintiff's request for an order granting his FRCVP Rule 56 request and an order denying Defendant's Motion to Dismiss.

## VERIFICATION

I James Davis Bennett do verify the above statements are true and correct to the best of my rememberance.

Signed: _James Davis Bennett_____

James Davis Bennett

Dated: _10·11·07_____

## STATEMENT OF GENUINE ISSUES/INTRODUCTION

In deciding the Government's motion to dismiss the court faces the following issue:

> The Fifth exclusive makes indictment through Grand Jury the exclusive means of criminal prosecution because it lowers the possibility of trials on charges that are unfair and fraudulent. The Government circumvented the Grand Jury to falsely imprison the Plaintiff and when the Plaintiff attempted to get monetary compensation via civil suit and summary judgment the Government used matters outside the complaint to justify an affirmative defense of Res Judicata. **SHOULD THE GOVERNMENT BE ALLOWED TO DEPRIVE THE PLAINTIFF OF HIS RIGHT TO BE CHARGED BY A GRAND JURY, USE IT IN A DEFENSE PRESENTING MATTERS OUTSIDE THE PLEADINGS WITHOUT CONVERSION TO A FRCVP RULE 56?**

## ARGUMENTS

**a. The criminal judgment and any other judgment supported by it is void and is unsupportable because the Government intentionally circumvented the Plaintiff's Fifth Amendment right through fraud.**

No Person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or Indictment of a Grand

-3-

Jury. The Fifth Amendment.

The Grand Jury came to be regarded as an institution by which the subject was rendered secured against oppression from unfounded prosecution. Ex Parte Bain, 7 S ct 781.

The Court cannot permit a defendant to be tried on charges that are not made in the indictment against him. Stirone v. U.S. 80 S ct 270.

The Government created three unauthorized indictments and tried the Plaintiff on one. Exhibit A. Prior to trial the Plaintiff informed the court that the Government was falsifying charges and that the court's appointed attorney was doing nothing about it. Exhibit B.

During trial the Government brings in additional counts that don't appear on their self created indictment and the Government, the court, and the court appointed attorney discuss un-charged counts and the violations of law that are to apply to each. Exhibit C.

During sentencing the Plaintiff requested the court disclose the Grand Jury Indictment, all charges presented to the Petit Jury,

and all verdict forms used. The court refused. Exhibit D.

The guiding doctrine in this case is the equitable maxim that "he who comes into equity must come with clean hands". That doctrine is rooted in the historical concept of the court of equity being a vehicle for affirmatively enforcing the requirements of conscience and good faith. This presupposes a refusal on the court's part to be "the abetter of iniquity". Bein v. Heath, 12 L.Ed. 416.

The clean hands doctrine gives wide range to the court's use of discretion in refusing to aid the unclean litigant. It is "not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion". Keystone Driller v. General Excavator, 78 L.Ed. 293.

Setting aside a judgment to permit a new trial, altering the terms of the judgment, or **restraining the beneficiaries of the JUDGMENT from taking any benefit whatever from it are the usual forms of relief which have been granted through the clean hands doctrine.** Hazel-Atlas Co. v Hartford Co., 88 L Ed 1250, 1255.

The Government's hands are soiled with fraudulent indictments, trial on un-charged counts, and intentional criminal cover-up at sentencing and beyond. See Exhibits A-E.

-5-

If the Government continues to refuse to make full disclosure then they have failed to meet their burden of supporting their Res Judicata Affirmative Defense and have failed to contravene the Plaintiff's allegations of fraud. Therefore, the Clean Hands Doctrine bars relief through any defense available to the Government.

b. **The Government's request for dismissal pursuant to FRCVP Rule 12(b)(1)** "for lack of jurisdiction over the subject matter" is not logically structured in common sense or law. Having exposed that defense leaves them with their FRCVP Rule 12(b)(6) Motion resting on the Doctrine of Res Judicata which refers to a case not mentioned in the pleadings and therefore must be converted to a FRCVP Rule 56 with Judgment for the Plaintiff Pursuant to Local Rule 7(b).

**Subject Matter Jurisdiction** is the Power to hear a certain type of case and the Power to grant the specified relief. Black's Law Dictionary 8th Edition.

The District Court's judicial Power derives from Article III, Section 1 of the Federal Constitution.

The District Court's Judicial Power extends to all cases arising

-6-

Under the Constitution and Laws of the United States in Controversies

involving the United States. Article III, Section 2, Federal Constitution.

The caption in the instant case makes clear that subject

matter jurisdiction is "Pursuant to Bivens vs Six Unknown Agents,

The United States Constitution, and Title 28, United States Codes,

Section 1346". Equally clear is the Defendant's contradictory

request to the court asking it to view the instant action as

identical to the prior action in "Bennett 1". They then ask the court

to uphold the jurisdiction of the court issuing the judgment in

"Bennett I" while at the same time asking for dismissal based on the

same subject matter jurisdiction. It is irrational for the court to

grant jurisdiction to legitimize a judgment in one action for the sole

purpose of denying jurisdiction in another action which is alleged

to be of the same subject matter. The Constitution only empowers

Congress  to legislate subject matter jurisdiction through Article I,

Section 1.

The above is a perfect example of the Clean Hands Doctrine as

mentioned earlier. It demonstrates the greater propensity towards

fraud that will be used by a person who has gotten away with it before.

The Government's only defense would be to produce the Grand

-7-

Jury signed indictments matching all 25 un-charged counts

presented to the Petit Jury and to disclose the 25 related verdict

forms(see Exhibit E for sample verdict form presented by court

appointed attorney who assisted the Government and compare it with

indictment in Exhibit A)

**Res Judicata** is an Affirmative defense that may be pleaded

[FRCVP Rule 8(c)] or "made by Motion"[FRCVP Rule 12(b)(6)]. The

burden of proving the Defense rest with the Defendant[Black's Law

Dictionary 8th Edition].

"In order to apply Res Judicata, there must be the existence

of (1) an identity of parties in both suits; (2) a judgment rendered

by a court of competent jurisdiction; (3) a final judgment on the

merits; and (4) an identity of the cause of actions in both suits".

see Defendant's Motion page 5 second paragraph.

"Motions to dimiss that present matters outside the pleading are

converted to motions for summary judgment". Item #3 Court's Order

filed 8-21-07.

If motions to dismiss for failure to state a claim present

matters outside the pleadings that are not excluded by the court

the motion shall be treated as a motion for summary judgment

"and disposed of as provided in Rule 56". FRCVP Rule 12(b)(6).

If an opposing party to a motion fails to "serve and file a

memorandum of points and authorities in opposition" in the

time prescribed "the court may treat the motion as conceded".

Local Rule 7(b).

In order for the Plaintiff to fully respond to the Defendant's

Affirmative Defense of Res Judicata of a matter outside these

proceedings it requires conversion of his motion to a motion for

summary judgment and the allowance of time to conduct the associated

discovery. See Fox v. Strickland, 837 F2d at 509 and Neal v. Kelly,

963 F2d at 455.

The only things that can be determined from the Defendant's Motion

is (1) the parties are not the same (Crawford, Kennedy, The United

States, and the State Bar of California were not parties to "Bennett 1"),

(2) "Bennett 1" was not a final judgment on the merits (The Court

Dismissed sua sponte prior to Defendants' answer), and (3) the

cause of actions are different (false imprisonment etc. was not a

part of "Bennett 1"). It may be said that these are the only

-9-

things that can be said conclusively regarding the judgment

in "Bennett 1" without further inquiry.

If the court deems it equitable to proceed to convert the

Defendant's Motion to FRCVP Rule 56, the Plaintiff hereby draws

the court's attention to Plaintiff's FRCVP Rule 56 Motion which

was filed without response from the Defendant within the provisions

of Local Rule 7(b) and would thereby request the court "treat the

motion as conceded and would further move the court to order summary

judgment in favor of the Plaintiff on the issues contained therein.

## CONCLUSION

The complaint starts with a proffer to the Government to

reveal the Grand Jury Foreperson signed indictment matching the

"25 un-charged, un-indicted, and un-arraigned counts" used at

trial and in return the Plaintiff will dismiss his criminal

appeal(complaint page 1, paragraph 1). In addition the Plaintiff

is now willing to dismiss all civil actions and sign a waiver

releasing the Government from all liability associated with the

criminal prosecution in exchange for the aforementioned disclosures.

After all it is the Government's Affirmative Defense and they

have the burden of proving its' authenticity if they want the benefit of escaping trial.

If the Government cannot produce an indictment signed by a Grand Jury Foreperson matching the 25 un-charged counts presented to the jury and support it with 25 verdicts unanimous in nature then it cannot defeat the allegations of fraud and false imprisonment nor will it be able to use Heck v. Humphrey's Favorable Outcome Doctrine as an Affirmative Defense because Heck provides two exceptions for fraud and Fourth Amendment violations and both are present in the instant complaint(see Heck, 129 Led 2d at 393 footnote#4 and 394 footnote#7). Besides, on May 19, 2006 the court issued a FRCRP Rule 29 acquittal of the count alleging all 25 counts(see Exhibit E-Sample Verdict Form) presented to the jury. Accordingly Heck's Favorable Outcome Doctrine no longer applies.

Therefore if the judgment under which the Plaintiff is imprisoned is a nullity then the officer who obeys it is guilty of false imprisonment. In Re Watkins, 7 Led 650.

Dated this 11th Day of October 2007,

By: _____

James Davis Bennett/Reg#32589-112
FCI Safford
P.O. Box 9000
Safford, AZ 85548

-11-

THE UNITED STATES DISTRICT COURT
FOR
THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| James Davis Bennett, | ) | CASE NO.: 1:07-cv-01321 |
| | ) | |
| Plaintiff, | ) | The Hon. Colleen Kollar-Kotelly |
| | ) | |
| vs. | ) | [Proposed] ORDER |
| | ) | |
| James M. Crawford, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

1. Having found that the Defendant United States of America

has presented matters outside of the Pleadings and having also

found that they have failed to respond to Plaintiff's Motion

for Summary Judgment as mandated by Local Rule 7(b) it is the

Court's Judgment that the Defendant's FRCVP Rule 12(b)(1) be

denied outright and their FRCVP Rule 12(b)(6) be converted

to FRCVP Rule 56 and Granted in favor of the Plaintiff pursuant to

Local Rule 7(b).


_____
Hon. Colleen Kollar-Kotelly

_____
Dated

## CERTIFICATE OF SERVICE

**CASE NAME:** James Davis Bennett v. James M. Crawford, et al.

**CASE NUMBER:** 1:07-cv-01321

I certify that a copy of the Affidavit in support of and Motion for an Order Granting Plaintiff's FRCVP Rule 56 and Denying Defendant's Motion to Dismiss was served on the parties indicated below in a manner prescribed:

| PARTY SERVED | METHOD OF SERVICE | DATE SERVED |
|---|---|---|
| James M. Crawford<br>528 N. Glassell<br>Orange, Ca.  92867 | US Mail | 10-19-07 |
| Sean Kennedy<br>321 East 2nd Street<br>Los Angeles, Ca. 90012 | US Mail | 10-19-07 |
| California Attorney General<br>1300 "I" Street<br>Sacremento, Ca.  94244-2550 | US Mail | 10-19-07 |
| United States Attorney<br>Attn: Laurie J. Weinstein<br>555 Fourth Str., NW, Rm E4820<br>Washington, DC 20530 | US Mail | 10-15-07 |
| Alicemarie H. Stotler<br>411 W. Fourth Street<br>Santa Ana, Ca.  92701 | US Mail | 10-19-07 |
| Alan J. Taylor<br>1 Woodward Ave. Ste 2400<br>Detroit, MI 48226 | US Mail | 10-19-07 |

_____
James Davis Bennett

10·11·07
_____
Date

**EXHIBIT-A**



FILED
CLERK, U.S. DISTRICT COURT

SEP - 7 2005

CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2004 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) No. SA CR 03-25(B)-AHS |
| Plaintiff, | ) |
| | ) S E C O N D |
| v. | ) S U P E R S E D I N G |
| | ) I N D I C T M E N T |
| JAMES DAVIS BENNETT, | ) |
| Defendant. | ) [18 U.S.C. § 1343: Wire Fraud; |
| | ) 18 U.S.C. § 1344: Bank Fraud; |
| | ) 18 U.S.C. § 225: Continuing |
| | ) Financial Crimes Enterprise; 18 |
| | ) U.S.C. § 2(b): Aiding and |
| | ) Abetting] |

The Grand Jury charges:

COUNTS ONE THROUGH FOUR

[18 U.S.C. §§ 1343 and 2(b)]

INTRODUCTION

At all times relevant to this indictment:

1.    Defendant JAMES DAVIS BENNETT ("BENNETT") was the owner
of West Belle Realty, a company in the business of representing
buyers and sellers in real estate transactions, West Belle
Mortgage, a company in the business of originating mortgage loans

//

//

BAS:bas

BAS

1  for real estate transactions, and West Belle Mortgage Escrow, a
2  company in the business of providing escrow services for real
3  estate transactions (collectively "West Belle").

4      2.    Steven Brian Rogers ("Rogers") was a realtor and loan
5  agent at West Belle.

6      3.    Donna M. Simon ("Simon") was a loan agent at Long Beach
7  City Mortgage, a company in the business of originating mortgage
8  loans for real estate transactions.

9      4.    Benny Ibarra ("Ibarra") and Ricardo Omar Garcia
10 ("Garcia") were employees of West Belle.

11 THE FRAUDULENT SCHEME

12      5.    Beginning on a date unknown and continuing through in
13 or about January 2002, in Los Angeles and Orange Counties, within
14 the Central District of California, and elsewhere, Defendant
15 BENNETT, Rogers, Simon, Ibarra, Garcia and others knowingly
16 devised, participated in, and executed a scheme to defraud
17 mortgage lenders and to obtain money and property by means of
18 materially false and fraudulent pretenses, representations and
19 promises.

20      6.    In carrying out this scheme, Defendant BENNETT, Rogers,
21 Simon, Ibarra, Garcia and others engaged in and caused others to
22 engage in the following fraudulent and deceptive acts, practices
23 and devices, among others:

24      a.    Defendant BENNETT, Rogers, Simon, Ibarra, and
25 other co-schemers would identify residential real estate (the
26 "properties") for sale.

27 //

28
                                2

1        b.   Defendant BENNETT, Rogers, Simon, Ibarra, and

2 other co-schemers would recruit relatives and associates (the

3 "intermediaries") to enter into escrows to purchase the

4 properties at or near fair market value.

5        c.   Defendant BENNETT, Rogers, Simon, Ibarra, and

6 other co-schemers would recruit other relatives and associates

7 (the "straw buyers") to enter into other escrows to purchase the

8 properties from the intermediaries at inflated prices.

9        d.   To obtain mortgage loans for the straw buyers,

10 Defendant BENNETT, Rogers, Simon, Ibarra, and Garcia prepared and

11 caused others to prepare fraudulent loan packages concealing the

12 double escrows and falsely representing that the straw buyers

13 were purchasing the properties directly from the original sellers

14 at the inflated prices and that the straw buyers were

15 creditworthy.  To support these fraudulent loan packages,

16 Defendant BENNETT, Rogers, Simon, Ibarra, and Garcia prepared and

17 caused others to prepare false and fabricated documentation,

18 including false settlement statements, grant deeds, title

19 reports, down payment checks, pay stubs, W-2 statements, and bank

20 statements.

21        e.   Defendant BENNETT, Rogers, Simon, Ibarra, and

22 other co-schemers submitted and caused others to submit these

23 fraudulent loan packages to mortgage lenders in Orange and Los

24 Angeles Counties.

25    7.   Based on the fraudulent acts, practices and devices,

26 the mortgage lenders funded the loans.  At the close of escrow,

27 Defendant BENNETT, Rogers, Simon, Ibarra, Garcia and other co-

28

3

1 schemers received fees, commissions and profits.

2     8.   Within months of the resale of the residential

3 properties, the straw buyers typically defaulted on the loan

4 payments, leaving mortgage lenders with losses in excess of

5 $1,000,000.

6 <u>THE WIRINGS</u>

7     9.   On or about the dates set forth below, in the Central

8 District of California and elsewhere, for the purpose of

9 executing the above-described scheme to defraud and attempting to

10 do so, Defendant BENNETT, Rogers, Simon, Ibarra, Garcia, and

11 others caused to be transmitted in interstate commerce by wire

12 communications the following wire transfers from mortgage

13 lenders' accounts outside California to title insurance company

14 and escrow accounts in California.

| Count | Date | Funds Wired |
|---|---|---|
| One | 7/27/99 | The CIT Group's $270,000 mortgage loan for the purchase of 2612 Griffith Avenue, Los Angeles, California |
| Two | 10/14/99 | Mortgage Portfolio Services' $233,750 mortgage loan for the purchase of 760 East 43rd Place, Los Angeles, California |
| Three | 3/1/00 | Greenpoint Mortgage Funding, Inc.'s $225,250 mortgage loan for the purchase of 615 West Imperial Highway, Los Angeles, California |
| Four | 2/27/01 | Laguna Capital Mortgage Corporation's $248,000 mortgage loan for the purchase of 860 Cerritos Avenue, Long Beach, California |

COUNTS FIVE THROUGH ELEVEN

[18 U.S.C. §§ 1344 and 2(b)]

10.  The Grand Jury hereby incorporates by reference and realleges each and every allegation of paragraphs one through eight of this indictment.

11.  Flagstar Bank, Equicredit Corporation, and First Union Mortgage Corporation were financial institutions and wholly owned subsidiaries of financial institutions the deposits of which were insured by the Federal Deposit Insurance Corporation.

12.  On or about the dates set forth below, within the Central District of California, Defendant BENNETT, Rogers, Simon, Garcia, and others, for the purpose of executing the above-described scheme to defraud the following financial institutions and to obtain monies and funds owned by and in the custody and control of these financial institutions by means of materially false and fraudulent pretenses, representations and promises, caused these financial institutions to disburse loan proceeds in the amounts listed below for the purchase of the properties listed below:

| Count | Date | Financial Institution, Loan Amount, Property |
|-------|------|----------------------------------------------|
| Five | 8/6/99 | Flagstar Bank's $256,000 mortgage loan for the purchase of 245 West 56th Street, Los Angeles, California |
| Six | 8/16/99 | Flagstar Bank's $252,000 mortgage loan for the purchase of 1412 West 94th Place, Los Angeles, California |

| 1 | Seven | 9/17/99 | Flagstar Bank's $247,500 mortgage loan for |
| 2 | | | the purchase of 768 East 43rd Place, Los |
| 3 | | | Angeles, California |
| 4 | Eight | 11/22/00 | Equicredit Corporation's $200,000 mortgage |
| 5 | | | loan for the purchase of 1495 Alamitos |
| 6 | | | Avenue, Long Beach, California |
| 7 | Nine | 11/28/00 | Equicredit Corporation's $232,000 mortgage |
| 8 | | | loan for the purchase of 1105 Ohio Avenue, |
| 9 | | | Long Beach, California |
| 10 | Ten | 3/2/01 | Equicredit Corporation's $248,000 mortgage |
| 11 | | | loan for the purchase of 1304-1306 Junipero |
| 12 | | | Avenue, Long Beach, California |
| 13 | Eleven | 1/8/02 | First Union Mortgage Corporation's $227,500 |
| 14 | | | mortgage loan for the purchase of 1052 North |
| 15 | | | Loma Vista Drive, Long Beach, California |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | | | |
| 26 | | | |
| 27 | | | |
| 28 | | | |

COUNT TWELVE

[18 U.S.C. § 225]

13.  The Grand Jury hereby incorporates by reference and realleges each and every allegation of paragraphs one through twelve of this indictment.

14.  Beginning on a date unknown and continuing through in or about January 2002, in Los Angeles and Orange Counties, within the Central District of California, Defendant BENNETT knowingly conducted a continuing financial crimes enterprise, in that Defendant BENNETT committed a series of violations under Title 18, United States Code, Sections 1341, 1343, and 1344, which violations were undertaken by Defendant BENNETT, in concert with at least three other persons whom Defendant BENNETT organized, managed, and supervised, and from which continuing series of violations Defendant BENNETT received in excess of $5,000,000 in gross receipts from on or about April 2, 1999, and ending on or about March 2, 2001.

A TRUE BILL


_____
Foreperson

DEBRA W. YANG
United States Attorney


THOMAS P. O'BRIEN
Assistant United States Attorney
Chief, Criminal Division


KENNETH B. JULIAN
Assistant United States Attorney
Acting Chief, Santa Ana Branch Office

7

July 22, 2007

Freedom of Information Act
320 First Street, N.W.
Room 527
Washington, DC  20534

Reference: United States District Court
           Criminal Case No. SA CR 03-0025(B)AHS

Dear Sir/Madame,

     I am making this request under the Freedom of Information
Act(FOIA) as codified in Title 5, United States Codes, Section
552. My request is pursuant to 5 USC Section 552(a)(3)(A)(i)(ii).
My specific request is made for the purpose of obtaining the copies of
the three Criminal Indictments which contain Grand Jury Foreperson
signatures. The Initial Indictment was received January 2003. The
First Superseding Indictment was received October 2004 and the
Second Superseding Indictment was received September 2005. Please
forward Copies of those three Indictments which have the Authenticating
Foreperson's signatures thereon in addition Please forward copies of
of the ballots used by the Grand Jury Members which indicate their
concurrance to Indict. In addition please forward the signed verdict forms
related to all 25 convictions.

     To summarize I am requesting the following specific documents
related to Federal Criminal Case Number SA CR 03-0025(B)AHS-United
States of America vs. James Davis Bennett:

     a. all three indictments with grand jury foreperson's
        signatures-the dates are 1/2003, 10/2004, and 9/2005,
     b. the signed ballots used by the Grand Jury in each of
        the Indictments mentioned in "a" above, and
     c. all signed verdict forms related to all 25 convictions.

     You may forward the above to the address appearing below.

           Thanks in Advance,

James Davis Bennett/Reg#32589-112
FCI Safford
P.O. Box 9000
Safford, AZ 85548

# FREEDOM OF INFORMATION/PRIVACY ACT
## REQUEST ACT OF 1974

TO: Department of Justice    FROM:
Attn: Freedom of Information    James Davis Bennett
950 Pennsylvania Ave. NW    Reg#32589-112
Washington DC   20530-0001    FCI Safford
     P.O. Box 9000
     Safford, AZ 85548

Pursuant to Title 5 U.S.C. section 552 and all other relevant sections and parts thereof, I the undersigned, also identified above in the upper-right-hand section, hereby respectfully request the following information.

1. All three indictments with grand jury foreperson's signatures-they are dated 1/2003, 10/2004, and 9/2005.

2. The signed ballots used by the Grand Jury in each of the Indictments mentioned in "1" above, and

3. All signed verdict forms related to all 25 convictions.

Items 1, 2, and 3 above are associated with Federal District Court Case number SA CR 03-0025(B)AHS which was opened in January 2003 and closed in January 2007. The case was processed in the Central District of California.

If there are applicable rules and regulations governing your agency in such matters and request(s), please forward them to me so that I may comply with them per the FREEDOM OF INFORMATION ACT of 1974

If for any reason the above requested information is deemed to be privileged or exempt under the FREEDOM OF INFORMATION ACT, please specify the Statutory reason for the exemption, the name and title of the person or persons making the decision to withhold the material.

The FREEDOM OF INFORMATION ACT also provides that if only portions of a file are exempt the remainder must be released. I also reserve the right to appeal for the withholding, deletion or exemption of any portions of the materials requested herein.

Per the regulations and rules of the FREEDOM OF INFORMATION ACT of 1974 your agency has (20) working days to respond to this request. In the event I do not receive your response in the time period prescribed by the rules of the Act, I will deem this formal request denied, and seek judicial remedy.

DATED:___July 29, 2007___    SUBMITTED BY:___James Davis Bennett___
                       REQUESTER

**EXHIBIT-B**

3

```
 1    SANTA ANA, CALIFORNIA; MONDAY, OCTOBER 31, 2005; 1:30 P.M.

 2                          -oOo-

 3          THE CLERK:  CALLING CALENDAR ITEM NO. 4,

 4    SACR 03-25(B)-AHS, UNITED STATES OF AMERICA VERSUS JAMES

 5    DAVIS BENNETT.

 6          COUNSEL, APPEARANCES PLEASE.

 7          MR. SAGEL:  GOOD AFTERNOON, YOUR HONOR.

 8          BRENT SAGEL, ON BEHALF OF THE GOVERNMENT.

 9          THE COURT:  THANK YOU.

10          MR. MEZA:  GOOD AFTERNOON, YOUR HONOR.

11          MIKE MEZA, ON BEHALF OF MR. BENNETT, WHO IS

12    PRESENT.

13          THE COURT:  THANK YOU.

14          IN THIS MATTER, THE COURT RECEIVED AN APPLICATION

15    BY DEFENDANT THROUGH COUNSEL THAT WAS A REQUEST ON

16    DEFENDANT'S MOTION TO SEEK NEW COUNSEL; OR, IN THE

17    ALTERNATIVE, TO REPRESENT HIMSELF.  AND THIS HAD TO DO -- IT

18    LOOKS LIKE WITH THE MOTION THAT MR. BENNETT IS FILING,

19    HIMSELF, JAMES BENNETT PER SE.  I'M LOOKING AT THIS

20    ATTACHMENT.  EXHIBIT A TO MR. MEZA'S FILING OF OCTOBER 27

21    HAS TO DO WITH A REQUEST ALLOWING DEFENDANT TO SEEK NEW

22    REPRESENTATION, OR IN THE ALTERNATIVE, ALLOW

23    SELF-REPRESENTATION.

24          NOW, IS THERE NEW COUNSEL PRESENT TO UNDERTAKE

25    REPRESENTATION FOR MR. BENNETT HERE TODAY?
```

4

```
 1            I DO NOT SEE ANYONE APPEARING FOR MR. BENNETT, SO
 2    I GUESS THERE IS NO NEW COUNSEL YET ENGAGED.
 3            AND MR. MEZA, WAS THERE ANYTHING YOU WANTED TO ADD
 4    IN CONNECTION WITH THIS APPLICATION?
 5            MR. MEZA:  YOUR HONOR, I KNOW THAT MR. -- I
 6    PERSONALLY -- NOTHING DIRECTLY.  I KNOW MR. BENNETT WANTS TO
 7    ADDRESS THE COURT.  I WOULD ASK THE COURT TO DO THAT IN A
 8    CLOSED COURTROOM.
 9            THE COURT:  I BELIEVE THE APPLICATION WAS SERVED
10    ON THE GOVERNMENT, SO I THINK AT THIS POINT IT'S NOT GOING
11    TO BE APPROPRIATE TO CLOSE IT.
12            MR. SAGEL, YOU DID RECEIVE A COPY OF THE
13    APPLICATION, DID YOU?
14            MR. SAGEL:  I DID, YOUR HONOR.
15            AND I WOULD REQUEST THAT IF WE EVEN PROCEED TO A
16    FERRETA-TYPE OF COLLOQUY -- I'M NOT SURE WHAT MR. BENNETT IS
17    GOING TO BE ASKING FOR, BUT I BELIEVE THE GOVERNMENT DOES
18    NEED TO BE PRESENT FOR SUCH A COLLOQUY.
19            THE COURT:  ALL RIGHT.  WELL, MR. BENNETT, WHY
20    DON'T YOU TELL US WHAT YOUR THOUGHTS ARE, MINDFUL THAT, OF
21    COURSE, THE GOVERNMENT'S COUNSEL IS PRESENT AND INTERESTED
22    IN HEARING WHAT YOU HAVE TO SAY.  I HAVE INFERRED SO FAR
23    THAT YOU DO NOT HAVE A NEW ATTORNEY TO REPRESENT YOU.  AND
24    OF COURSE, WE ARE ALL MINDFUL THAT THE EXHIBIT CONFERENCE IS
25    THIS FRIDAY AND THE TRIAL IS THE FOLLOWING TUESDAY, NOVEMBER
```

1    THE 8TH.

2              PLEASE PROCEED.

3              DEFENDANT BENNETT:  YES, YOUR HONOR.

4         I GUESS I FIRST WANT TO START OFF WITH THIS --

5    BACK IN FEBRUARY OF '04, THIS COURT DIRECTED ME TO GO DOWN

6    TO THE FEDERAL DEFENDER'S OFFICE TO SEEK COUNSEL.  AT THAT

7    TIME, I WAS EXPLORING MY OWN OPPORTUNITIES TO PROVIDE MY OWN

8    COUNSEL.  AND I WAS TOLD TO DO THAT, WHICH I DID.  AND

9    SHORTLY THEREAFTER, THE COURT ASSIGNED MR. MEZA TO TAKE OVER

10   MY CASE.

11             AT THAT PARTICULAR TIME, I WENT ALONG WITH THAT,

12   HOPING THAT THINGS WOULD WORK OUT FAIRLY WELL.  SINCE THAT

13   TIME, MR. MEZA AND I HAVE COME TO SOMEWHAT DISAGREEMENTS IN

14   REGARDS TO THE STRATEGY OF THE CASE AND ACTUALLY SOME OF THE

15   IMPORTANT MOTIONS THAT NEEDED TO BE MADE.  I'VE TRIED -- AND

16   I THINK THE COURT KNOWS THIS ITSELF THAT I HAVE TRIED ON

17   SEVERAL OCCASIONS TO TRY AND GET MOTIONS IN FRONT OF THE

18   COURT, WHICH THE MOTIONS WERE SENT BACK, AND THEY WERE NOT

19   FILED.  IN ADDITION TO THAT, I HAVE ALSO TRIED TO FILE AN

20   APPEAL BACK IN DECEMBER.

21             SO I JUST WANTED THE COURT TO UNDERSTAND THAT

22   THERE ARE CERTAIN THINGS THAT -- CERTAIN ISSUES THAT I HAVE

23   THAT I BELIEVE ARE VERY PERTINENT TO THE CASE.  AND I HAVE

24   NOT HAD AN OPPORTUNITY TO PUT THOSE -- PUT THOSE ISSUES FOR

25   FORTH.  I'VE BEEN DOING RESEARCH ON MY OWN, AND I HAVE BEEN

6

1    COMING UP WITH FACTUAL INFORMATION THAT I FEEL IS VERY

2    IMPORTANT -- IMPORTANT TO THE CASE AND PERTINENT TO THE

3    OUTCOME OF THE CASE.  AND I HAVE NOT BEEN ABLE TO HAVE A

4    CHANCE TO PUT THAT BEFORE THE COURT.

5          AND THE APPOINTED COUNSEL THAT THE COURT HAD --

6    THE COUNSEL THAT COURT DID APPOINT FOR ME, MR. MEZA, ALSO

7    REQUESTED WITH THE COURT BACK IN APRIL FOR FUNDING FOR

8    COPIES OF DISCOVERY THAT THE COURT SHORTLY THEREAFTER

9    DENIED.  SO THAT WAS IN APRIL OF THIS YEAR.

10          IN ADDITION, I BELIEVE MR. MEZA ALSO REQUESTED FOR

11    AN INVESTIGATOR WHICH WAS DENIED.  SO THESE THINGS CAME

12    ABOUT FAIRLY QUICKLY.  AND THE COURT REQUESTED THAT I

13    PROVIDE SOME TYPE OF FINANCING FOR THESE ITEMS.  AT THAT

14    TIME, I DID NOT HAVE THE MONEY TO DO SO.  I WASN'T EXPECTING

15    THESE EXPENSES TO COME UP.  AND AS THEY CAME -- AS THEY

16    AROSE, I WASN'T ABLE TO BE ABLE TO CONTRIBUTE.

17          I HAVE INFORMATION THAT I DO NEED TO GET TO THE

18    COURT.  I WOULD ASK THE COURT TO AT LEAST ALLOW ME AN

19    OPPORTUNITY TO HIRE COUNSEL THAT I MIGHT BE ABLE TO HAVE

20    PRESENT MY SIDE IN THE WAY THAT I BELIEVE IT'S NECESSARY TO

21    PUT A DEFENSE ON.  AND IN THE ALTERNATIVE, TO ALLOW ME THE

22    OPPORTUNITY TO AT LEAST FILE MOTIONS WHERE I CAN GET THE

23    FACTS THAT I HAVE DISCOVERED IN FRONT OF THE COURT, SO IT

24    CAN BE -- SO THAT THEY CAN BE ANALYZED.

25          THE COURT:  THE GOVERNMENT ATTORNEY FILED AN

1    OPPOSITION TO A MOTION FOR A TRIAL CONTINUANCE ON OCTOBER

2    THE 17TH AND OUTLINED THE CHRONOLOGY OF THE CASE GOING BACK

3    TO FEBRUARY OF 2003 AND MADE A FOOTNOTE THAT THERE WERE FOUR

4    CONTINUANCES IN THE CASE THAT WERE NECESSARY AS A RESULT OF

5    DEFENDANT FAILING TO RETAIN COUNSEL AS DIRECTED BY THE

6    COURT, CITING DOCKET ENTRY 64 TO 67.

7         SO THAT GOES WAY BACK TO THE BEGINNING.  THE CASE

8    WAS FIRST SET FOR TRIAL IN MARCH OF 2003.  THEN, THE TRIAL

9    DATE WAS CONTINUED SEVEN TIMES, AS RECOUNTED MARCH OF '03 TO

10   NOVEMBER 8TH OF '05, AND RECOUNTS WHAT YOU HAVE ALLUDED TO

11   WITH RESPECT TO THE COURT NEVER RECEIVING ANY FINANCIAL

12   INFORMATION FROM YOU, MR. BENNETT, THAT YOU WERE EITHER

13   UNABLE TO PAY FOR AN INVESTIGATOR OR FOR THE COPYING COST.

14        I GUESS MY QUESTION GOES BACK TO MY FIRST

15   QUESTION, WHICH IS:  DO YOU HAVE NEW COUNSEL TO REPRESENT

16   YOU FOR TRIAL ON NOVEMBER 8TH?

17        DEFENDANT BENNETT:  NO, I DON'T, YOUR HONOR.

18        I WAS -- I HAD MADE IN THAT MOTION TWO REQUESTS:

19   THE OPPORTUNITY TO SEEK NEW COUNSEL; OR IN THE ALTERNATIVE,

20   TO MOVE FORWARD AND HAVE AN OPPORTUNITY TO PRINT OUT --

21   PRESENT A DEFENSE THAT I FEEL IS APPROPRIATE.

22        I HAVE INFORMATION THAT I HAVE GOTTEN JUST WITHIN

23   THE WEEK THAT I HAVEN'T BEEN ABLE TO GET IN FRONT OF THE

24   COURT, AND I FEEL THAT NEEDS TO BE -- THE COURT NEEDS TO

25   ANALYZE SOME OF THIS INFORMATION, BECAUSE IT GOES DIRECTLY

8

1  TO THE MATERIALITY OF SOME OF THE ELEMENTS OF THE CRIME.

2  AND I CAN'T GET THAT IN FRONT OF COURT, BECAUSE I CAN'T

3  PRESENT MOTIONS BECAUSE THE COURT WON'T ACCEPT MOTIONS.

4          AND JUST BACKING UP, JUST A LITTLE BIT, IN REGARDS

5  TO THE AFFIDAVIT -- THE FINANCIAL AFFIDAVIT -- I DON'T KNOW

6  IF THE COURT REMEMBERS -- BUT AT THE TIME THAT I WAS ORDERED

7  TO GO DOWN TO THE FEDERAL DEFENDER'S OFFICE, I WAS TOLD TO

8  FILL OUT AN AFFIDAVIT, AND THAT WAS DONE THAT DAY.  SO THE

9  AFFIDAVIT THAT WE ARE REFERRING TO WAS DONE THE SAME DAY OR

10  THE DAY AFTER, AND IT'S BEEN ON FILE.

11          SO AS FAR AS THE AFFIDAVIT IS CONCERNED, I HAVE

12  LIVED UP TO MY SIDE OF THAT.  I DON'T KNOW IF THE COURT

13  REMEMBERS, BUT IT WAS ON FILE AND IT WAS -- THE FEDERAL

14  DEFENDER'S OFFICE HAS THAT FINANCIAL AFFIDAVIT.  AND I

15  ASSUMED THAT THE COURT LOOKED AT IT AND THAT WAS WHY THE

16  COURT APPOINTED MR. MEZA.  AND SO, TO COME THIS FAR IN THE

17  TRIAL PROCESS, YOU KNOW, THREE, FOUR MONTHS OUT AND TO FIND

18  OUT THAT THE COURT WAS UNWILLING TO PAY FOR COPIES AND

19  INVESTIGATORS AND SUBPOENAS, THAT SURPRISED ME AND PUT ME

20  ACTUALLY AT A DISADVANTAGE.  BECAUSE I NOW HAVE TO TRY TO

21  FIND -- LOCATE -- GET THAT KIND OF MONEY TOGETHER TO HAVE

22  THESE THINGS DONE, BUT I WOULD SAY TO THE COURT I AM NOT

23  WILLING TO DO THAT IF I AM NOT ABLE TO EXPRESS MY POINT OF

24  VIEW.  I AM NOT WILLING TO PAY FOR COPIES OR TO DO ALL OF

25  THOSE OTHER THINGS, IF I DON'T HAVE A VOICE IN IT.  I NEED

1  TO HAVE A VOICE.  I HAVE TO THIS POINT NOT BEEN ABLE TO

2  FORWARD MY VOICE IN THIS MATTER, OR TO PRESENT MY FACTS, OR

3  TO HAVE MY MOTIONS HEARD.  AND THAT'S --

4       I MEAN, MR. MEZA HAS PRESENTED WHAT HE FEELS IS

5  APPLICABLE AT CERTAIN POINTS.  HE HAS FILED MOTIONS, BUT

6  THOSE MOTIONS ARE MR. MEZA'S MOTIONS.  THEY DON'T

7  CHARACTERIZE WHAT I HAVE FOUND OUT AND THE ISSUES AND THE

8  FACTS THAT I HAVE IN MY POSSESSION.

9       THE COURT:  WE HAD COUNSEL APPOINTED FOR YOU,

10  BECAUSE YOU HAVE, IN ESSENCE, REFUSED TO GO HIRE YOUR OWN

11  ATTORNEY, MR. BENNETT.  AND I DON'T HAVE A FINANCIAL

12  AFFIDAVIT THAT SUGGESTS ANYTHING OTHER.  I JUST DON'T HAVE

13  AN AFFIDAVIT.  SO WHAT YOU MAY HAVE GIVEN TO SOMEBODY ELSE

14  IS NEITHER HERE NOR THERE.  AND, APPARENTLY, FROM WHAT

15  YOU'RE SAYING, THINGS HAVE CHANGED FOR YOU, IN ANY EVENT.

16  SO MAYBE THINGS HAVE CHANGED FOR YOU, BUT I JUST DON'T KNOW.

17  SO YOU ARE NOT UNDER OATH NOW AND YOU WEREN'T UNDER OATH

18  PREVIOUSLY, AND SO THE COURT MADE RULINGS BASED UPON WHAT IT

19  HAD BEFORE IT.

20       MR. MEZA'S MOTIONS ARE NOT MR. MEZA'S MOTIONS;

21  THEY ARE YOUR MOTIONS, MR. BENNETT.  THE MOTIONS HAVE

22  RECEIVED, AS YOU WELL KNOW, A LENGTHY SCRUTINY BY THE COURT.

23  I'M NOT GOING TO DELVE FURTHER WITH RESPECT INTO THE

24  RELATIONSHIP YOU HAVE WITH YOUR COUNSEL AT THIS POINT.  LET

25  ME JUST FIND OUT WHAT YOUR REQUEST IS AND THEN MR. SAGEL CAN

1  TELL US WHAT HE MAY KNOW, IF ANYTHING, AS TO SOME OF THESE

2  ITEMS THAT YOU HAVE MENTIONED.

3          WAS THERE ANYTHING ELSE YOU WANTED TO ADD,

4  MR. BENNETT?

5          DEFENDANT BENNETT:  IN REGARDS TO THE FACTS THAT I

6  HAVE UNCOVERED?  IS THAT WHAT WE ARE SPEAKING OF AT THIS

7  POINT?

8          THE COURT:  NO, THIS IS YOUR MOTION.  I JUST WANT

9  TO MAKE SURE THAT YOU HAVE SET FORTH YOUR MOTION FULLY AND

10  COMPLETELY.

11          DEFENDANT BENNETT:  WELL, FIRST OF ALL, I GUESS

12  WHAT I WANT TO SAY IS THAT I HAVE BEEN GATHERING FACTS THAT

13  I HAVE NOT BEEN ABLE TO PRESENT TO THE COURT.  AND I TRIED

14  TO TELL MY COUNSEL WHAT IT IS THAT I HAVE, AND I STILL

15  DON'T --

16          I HAVE IN FRONT OF ME A PLEA AGREEMENT FOR

17  MR. FERNANDEZ THAT WAS SENT TO ME, OR GIVEN TO ME AS AN

18  EXHIBIT IN AN ACCUSATION DEPARTMENT OF -- CALIFORNIA

19  DEPARTMENT OF REAL ESTATE ACCUSATION AGAINST MY LICENSE.  IN

20  THAT PLEA AGREEMENT ON PAGE 5, IT HAS MR. FERNANDEZ PLEADING

21  GUILTY TO DEFRAUDING INDIE MAC BANG ON A PROPERTY AT

22  958 EAST SIGNAL HILL -- 958 EAST 25TH STREET, IN SIGNAL

23  HILL.  ON THAT SAME PARTICULAR PROPERTY, I JUST WENT THROUGH

24  A HEARING A WEEK AGO WHEN I GOT THIS DOCUMENT AND THE

25  CALIFORNIA DEPARTMENT OF REAL ESTATE HAS BEEN -- THEY HAVE

1  ME ACCUSED OF DEFRAUDING THIS SAME -- NOT THIS LENDER BUT

2  ANOTHER LENDER FOR THE SAME AMOUNT OF MONEY.  THEY HAD THE

3  CEO THERE THAT INDICATED THAT THEY LOST THE MONEY, AND HERE

4  WE HAVE MR. FERNANDEZ PLEADING GUILTY TO BANK FRAUD OF FUNDS

5  THAT WEREN'T -- THAT DIDN'T COME FROM THE BANK THAT THE

6  GOVERNMENT IS SAYING THAT THEY DID COME FROM.  THIS HAS BEEN

7  THE WHOLE ISSUE.  THE GOVERNMENT HAS BEEN CONCEALING THE

8  JURISDICTION TO GET THESE CHARGES IN FRONT OF THE GRAND JURY

9  AND THE CHARGES IN FRONT OF THE COURT HERE.  AND I DON'T

10  HAVE AN OPPORTUNITY TO SHOW WHAT I HAVE AND TO SHOW WHAT I

11  FOUND OUT OVER THE COURSE OF THE TIME THAT WE HAVE BEEN

12  INVOLVED IN THIS.

13          THE COURT:  ARE YOU TALKING ABOUT THINGS THAT YOU

14  WANT TO BE EXHIBITS IN FRONT OF THE JURY?

15          DEFENDANT BENNETT:  I'M TALKING ABOUT -- I'M

16  TALKING ABOUT THE INABILITY TO BRING FORTH MOTIONS THAT ARE

17  RELEVANT TO THESE EXHIBITS, YOUR HONOR.  I CAN'T EXPRESS --

18          TAKE, FOR INSTANCE, THE MOTION TO QUASH AND

19  TRAVERSE THE SEARCH WARRANT THAT WAS FILED LAST AUGUST,

20  AUGUST OF 2004.  THE MOTION DID NOT GO TO THE ACTUAL HEART

21  OF WHAT WAS -- THE FACTUAL HEART OF WHAT WAS GOING ON.  WHAT

22  WAS ACTUALLY HAPPENING WAS THAT SPECIAL AGENT RAWLINS WAS --

23  IN HIS AFFIDAVIT TO THE COURT TO GET THE SEARCH WARRANT OF

24  MY OFFICE AND MY HOME, HE NEGLECTED TO TELL THE COURT THAT

25  THE FLAGSTAR BANK WAS NOT THE FUNDING INSTITUTION AND THAT

1    FLAGSTAR BANK WASN'T THE LENDING INSTITUTION.  AND I THINK

2    IN YOUR HONOR'S -- WHEN YOU GAVE YOUR OPINION, I THINK THAT

3    WHAT YOU SAID IN THERE WAS THAT IS THAT YOU FOUND THAT TO BE

4    DISTURBING.  YOUR HONOR, IT'S MATERIAL TO THE ELEMENT OF THE

5    CRIME AND ITS MORE THAN DISTURBING.  IT'S PERJURY, AND IT'S

6    OBSTRUCTION OF JUSTICE.

7         THE COURT:  ALL RIGHT.  ANYTHING ELSE YOU WANT TO

8    TELL US ABOUT YOUR MOTION?

9         DEFENDANT BENNETT:  NOTHING OTHER THAN I WOULD

10   LIKE THE OPPORTUNITY TO AT LEAST PRESENT MY CASE AND AT

11   LEAST FILE MOTIONS THAT I BELIEVE ARE PERTINENT TO MY

12   DEFENSE.  VERY PERTINENT TO MY DEFENSE.

13        THE COURT:  ALL RIGHT.  WHY DON'T YOU TAKE A SEAT,

14   MR. BENNETT.  AND MR. SAGEL CAN SET THE RECORD STRAIGHT, IF

15   THERE IS ANYTHING CHRONOLOGICALLY MISSED OR OTHERWISE AND

16   THEN WE CAN COME BACK TO YOU.

17        MR. SAGEL:  THANK YOU, YOUR HONOR.

18        FIRST AND FOREMOST -- AND I DON'T KNOW IF THIS

19   REQUIRES ASKING MR. BENNETT A FOLLOW-UP QUESTION -- BUT I

20   GUESS I'M STILL UNCERTAIN OF, IF YOUR HONOR AND THIS COURT

21   IS NOT GOING TO GIVE HIM NEW COUNSEL, WHICH THE GOVERNMENT

22   DOES NOT BELIEVE HE'S ENTITLED TO, IS NOT APPROPRIATE IN

23   THIS CASE, IS HE -- HIS MOTION SEEMS TO SAY THEN HE WANTS TO

24   REPRESENT HIMSELF.  I'M NOT SURE IF THAT IS STILL THE

25   POSITION HE IS TAKING.  THAT'S A QUESTION THE GOVERNMENT

**EXHIBIT-C**

DATE 12/15/05 UNLICENSED AUSA SAGEL SPEAKS TO SPOTLITE 53

1    THEM IN A SIMPLISTIC FORM AS MAIL FRAUD.

2         WITH REGARDS TO THE OTHER -- WITH REGARDS TO ALL

3    25 PROPERTIES OR THE 15 THAT ARE NOT CHARGED, MORE OR LESS,

4    THE GOVERNMENT WILL BASICALLY BE RELYING ON MAIL FRAUD.  I

5    DON'T THINK IT'S EITHER LEGALLY REQUIRED OF THE GOVERNMENT

6    OR THERE IS ANY BASIS TO TELL THE GOVERNMENT OR TO TELL THE

7    JURY HOW TO CONFINE THE GOVERNMENT.  THE GOVERNMENT CHARGED

8    THIS -- THE GRAND JURY CHARGED THIS CASE AFTER HEARING THE

9    EVIDENCE, UNDER ONE OF THREE, BANK FRAUD, WIRE FRAUD, OR

10   MAIL FRAUD, OR THE LATTER TWO AFFECTING A FINANCIAL

11   INSTITUTION.  I DON'T KNOW ANY BASIS IN WHICH DEFENDANT

12   COULD LIMIT WHAT THE GOVERNMENT COULD ARGUE IF THE FACTS

13   PRESENTED, FOR EXAMPLE, TWO OF THE UNCHARGED COUNTS ARE

14   FUNDED BY EQUICREDIT.  I DON'T SEE -- IF WE WANTED TO, WE

15   ARE GETTING TO THE SAME PLACE, WHETHER WE USE MAIL FRAUD

16   AFFECTING A FINANCIAL INSTITUTION.  WE WOULD HAVE TO USE THE

17   SAME EVIDENCE FROM THE BANK FRAUD STATUTES OF EQUICREDIT,

18   BASICALLY, THAT IT'S FDIC CHARTERED OR A WHOLLY OWNED

19   SUBSIDARY.  BUT I'M NOT SURE THAT THERE IS ANY BASIS IN

20   WHICH THE GOVERNMENT CAN BE CONFINED TO ONLY ONE OUT OF

21   THREE THEORIES WHEN THEY ARE ALL CHARGED IN THE INDICTMENT

22   AND THERE IS EVIDENCE TO SUPPORT ANY ONE OF THOSE THREE.

23         THE COURT:  THE DEFENDANT IS GOING BY WHAT COUNSEL

24   SAID AND THAT'S THE SAME THING I HEARD GOVERNMENT COUNSEL TO

25   SAY, WHICH WAS SUPPOSEDLY THAT WAS THE SIMPLE APPROACH TO

**EXHIBIT-D**

8

1    Jury Instruction No. 24 --

2            THE COURT:  Which you covered in your papers.

3            MR. BENNETT:  Yes, and which you denied -- I felt

4    that the Court had no jurisdiction to give that

5    instruction -- those two instructions or to allow the jury

6    to consider convictions in counts or charges that weren't

7    appearing in the Indictment the same way that --

8            THE COURT:  And so your papers indicate, sir.

9            MR. BENNETT:  So what we have here is Counts 5

10   through 10 which on the Indictment appear as bank fraud and

11   causing an act to be done, which bank fraud is Section 1344.

12   Causing an act to be done is Section (2)(b), and it's in the

13   conjunctive.  You gave jury instruction -- or Court

14   Instruction No. 7 to the jury.  You gave them a choice in

15   the disjunctive of selecting bank fraud, Section 1344, or

16   aiding and abetting bank fraud which is Section (2)(A).

17           THE COURT:  And so you indicated in your papers.

18           MR. BENNETT:  If we had no difference in the jury

19   instructions and the Indictment and since you have declined

20   my request for the verdict form, which I don't see any

21   reason why -- I would like to take a look at the verdict

22   form.

23           If there was no variance between the Indictment

24   and the jury instruction, then we would have no problem.  I

25   would think we wouldn't have a problem.  If the 25 counts

*SHARON SEFFENS, U.S. COURT REPORTER*

1   that you allowed the government to bring in during trial --

2   if that never occurred, I don't think we would have a

3   problem either, but you did.  You allowed 25 counts to come

4   in to this court, 25 counts.  We only started off with 12

5   counts in the Indictment.  Count 11 was dismissed.  That

6   left us with Counts 1 through 10 and Count 12.  I don't know

7   where the 25 counts came from.

8         I also do not know -- Jury Instruction or Court

9   Instruction No. 26, what are the properties and lenders that

10   Court instruction applies to.

11         So if you can answer those questions for me, and I

12   realize that you decline to provide me the verdict form on

13   all the charges.  I would once again request the verdict

14   form just so we know exactly what we are doing here and just

15   so that I know exactly what happened.

16         THE COURT:  Is there anything else?

17         MR. BENNETT:  If you could tell me exactly what

18   the convictions were?  The Court instructions were not --

19   did not match the Indictment, so I am trying to find out if

20   -- I just read your tentative on the sentencing.  I am

21   trying to find out what are the charges you plan to sentence

22   me on?  Is it going to be the indicted charges, or is it

23   going to be the charges that you told -- you gave

24   instructions to the jury on?

25         THE COURT:  Let me advise you that you are

1    entitled to take an appeal of the Court's judgment by filing

2    a Notice of Appeal within ten days from today's date, and if

3    you fail to file a Notice of Appeal within that time, there

4    will be no review of the Court's judgment.

5              Do you have questions about your right to appeal?

6         MR. BENNETT:  I think at this point I need an

7    attorney.  I am requesting assistance of a Court-appointed

8    attorney because you refuse to explain to me on the record

9    what the convictions are and what the violations are.  I

10   don't think I need to leave here without knowing that.

11             If you are going to give me a sentence to prison,

12   I think you have an obligation not only to this court but to

13   this government to tell me before I leave out of here.  The

14   Fifth Amendment demands that you tell me exactly what you

15   plan to sentence me on since you changed the charges from

16   what was indicted.

17             So I don't think it's something that you can tell

18   me that I need to finish and shut up and get moving.  I

19   think you need to do that, Your Honor, and I think that

20   justice demands it.

21        THE COURT:  Do you have any questions about your

22   right of appeal?

23        MR. BENNETT:  I am requesting at this point

24   Court-appointed counsel to complete this sentencing.

25        THE COURT:  Do you have any questions about your

**EXHIBIT-E**

3

4    We, the jury, in the above-entitled action, hereby

5    unanimously FIND the following:

6    PROPERTY

|  | FRAUD (MAIL) (WIRE) (BANK) | IDENTITY Of 3 PERSONS | MONEY DEFENDANT RECEIVED |
|---|---|---|---|

8

9    1.  2616 Griffith Ave.,

10       Los Angeles, CA

11       _____   _____   _____

12                     _____

13   2.  760 E. 43rd Pl.,          _____

14       Los Angeles, CA

15       _____   _____   _____

16                     _____

17   3.  615 W. Imperial Hwy.,     _____

18       Los Angeles, CA

19       _____   _____   _____

20                     _____

21   4.  860 Cerritos Ave.,        _____

22       Long Beach, CA

23       _____   _____   _____

24                     _____

25                     _____

26

27

28

1

EXHIBIT A

5.   245 W. 56th St.,

      Los Angeles, CA

6.   1412 W. 94th Pl.,

      Los Angeles, CA

7.   768 E. 43rd. Pl.,

      Los Angeles, CA

8.   1495 Alamitos Ave.,

      Long Beach, CA

9.   1105 Ohio Ave.,

      Long Beach, CA

10.  1304-1306 Junipero Ave.,

      Long Beach, CA

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

11. 9501 S. Western Ave.,

    Los Angeles, CA

12. 1519 W. 29th St.,

    Los Angeles, CA

13. 1177 W. 38th St.,

    Los Angeles, CA

14. 928 W. 78th St.,

    Los Angeles, CA

15. 456 E. 40th Pl.,

    Los Angeles, CA

16. 2253 Linden Ave.,

    Long Beach, CA

3

17.  1485-1489 Molino Ave.,

    Long Beach, CA

    _____    _____    _____

            _____

18.  1104-1106 ½ W. 87th St.,

            _____

    Los Angeles, CA

    _____    _____    _____

            _____

19.  1017 Raymond Ave.,

            _____

    Long Beach, CA

    _____    _____    _____

            _____

20.  930 E. 11th ST.,

            _____

    Long Beach, CA

    _____    _____    _____

            _____

21.  428 W. 5th St.,

            _____

    Long Beach, CA

    _____    _____    _____

            _____

22.  520 Chestnut Ave.,

            _____

    Long Beach, CA

    _____    _____    _____

            _____

            _____

4

23. 7819 S. Hoover St.

    Los Angeles, CA

    _____

    _____

    _____

24. 1495 Alamitos Ave.,

    Long Beach, CA

    _____

    _____

    _____

25. 2121 Atlantic Ave.,

    Long Beach, CA

    _____

    _____

    _____

_____

Foreperson

Date: _____

5

**EXHIBIT-B**

1    SANTA ANA, CALIFORNIA; MONDAY, OCTOBER 31, 2005; 1:30 P.M.

2                              -OOO-

3            THE CLERK:  CALLING CALENDAR ITEM NO. 4,

4    SACR 03-25(B)-AHS, *UNITED STATES OF AMERICA VERSUS JAMES*

5    *DAVIS BENNETT.*

6            COUNSEL, APPEARANCES PLEASE.

7            MR. SAGEL:  GOOD AFTERNOON, YOUR HONOR.

8            BRENT SAGEL, ON BEHALF OF THE GOVERNMENT.

9            THE COURT:  THANK YOU.

10           MR. MEZA:  GOOD AFTERNOON, YOUR HONOR.

11           MIKE MEZA, ON BEHALF OF MR. BENNETT, WHO IS

12   PRESENT.

13           THE COURT:  THANK YOU.

14           IN THIS MATTER, THE COURT RECEIVED AN APPLICATION

15   BY DEFENDANT THROUGH COUNSEL THAT WAS A REQUEST ON

16   DEFENDANT'S MOTION TO SEEK NEW COUNSEL; OR, IN THE

17   ALTERNATIVE, TO REPRESENT HIMSELF.  AND THIS HAD TO DO -- IT

18   LOOKS LIKE WITH THE MOTION THAT MR. BENNETT IS FILING,

19   HIMSELF, JAMES BENNETT PER SE.  I'M LOOKING AT THIS

20   ATTACHMENT.  EXHIBIT A TO MR. MEZA'S FILING OF OCTOBER 27

21   HAS TO DO WITH A REQUEST ALLOWING DEFENDANT TO SEEK NEW

22   REPRESENTATION, OR IN THE ALTERNATIVE, ALLOW

23   SELF-REPRESENTATION.

24           NOW, IS THERE NEW COUNSEL PRESENT TO UNDERTAKE

25   REPRESENTATION FOR MR. BENNETT HERE TODAY?

4

```
 1          I DO NOT SEE ANYONE APPEARING FOR MR. BENNETT, SO
 2    I GUESS THERE IS NO NEW COUNSEL YET ENGAGED.
 3          AND MR. MEZA, WAS THERE ANYTHING YOU WANTED TO ADD
 4    IN CONNECTION WITH THIS APPLICATION?
 5          MR. MEZA:  YOUR HONOR, I KNOW THAT MR. -- I
 6    PERSONALLY -- NOTHING DIRECTLY.  I KNOW MR. BENNETT WANTS TO
 7    ADDRESS THE COURT.  I WOULD ASK THE COURT TO DO THAT IN A
 8    CLOSED COURTROOM.
 9          THE COURT:  I BELIEVE THE APPLICATION WAS SERVED
10    ON THE GOVERNMENT, SO I THINK AT THIS POINT IT'S NOT GOING
11    TO BE APPROPRIATE TO CLOSE IT.
12          MR. SAGEL, YOU DID RECEIVE A COPY OF THE
13    APPLICATION, DID YOU?
14          MR. SAGEL:  I DID, YOUR HONOR.
15          AND I WOULD REQUEST THAT IF WE EVEN PROCEED TO A
16    FERRETA-TYPE OF COLLOQUY -- I'M NOT SURE WHAT MR. BENNETT IS
17    GOING TO BE ASKING FOR, BUT I BELIEVE THE GOVERNMENT DOES
18    NEED TO BE PRESENT FOR SUCH A COLLOQUY.
19          THE COURT:  ALL RIGHT.  WELL, MR. BENNETT, WHY
20    DON'T YOU TELL US WHAT YOUR THOUGHTS ARE, MINDFUL THAT, OF
21    COURSE, THE GOVERNMENT'S COUNSEL IS PRESENT AND INTERESTED
22    IN HEARING WHAT YOU HAVE TO SAY.  I HAVE INFERRED SO FAR
23    THAT YOU DO NOT HAVE A NEW ATTORNEY TO REPRESENT YOU.  AND
24    OF COURSE, WE ARE ALL MINDFUL THAT THE EXHIBIT CONFERENCE IS
25    THIS FRIDAY AND THE TRIAL IS THE FOLLOWING TUESDAY, NOVEMBER
```

5

1  THE 8TH.

2           PLEASE PROCEED.

3           DEFENDANT BENNETT:  YES, YOUR HONOR.

4           I GUESS I FIRST WANT TO START OFF WITH THIS --

5  BACK IN FEBRUARY OF '04, THIS COURT DIRECTED ME TO GO DOWN

6  TO THE FEDERAL DEFENDER'S OFFICE TO SEEK COUNSEL.  AT THAT

7  TIME, I WAS EXPLORING MY OWN OPPORTUNITIES TO PROVIDE MY OWN

8  COUNSEL.  AND I WAS TOLD TO DO THAT, WHICH I DID.  AND

9  SHORTLY THEREAFTER, THE COURT ASSIGNED MR. MEZA TO TAKE OVER

10 MY CASE.

11          AT THAT PARTICULAR TIME, I WENT ALONG WITH THAT,

12 HOPING THAT THINGS WOULD WORK OUT FAIRLY WELL.  SINCE THAT

13 TIME, MR. MEZA AND I HAVE COME TO SOMEWHAT DISAGREEMENTS IN

14 REGARDS TO THE STRATEGY OF THE CASE AND ACTUALLY SOME OF THE

15 IMPORTANT MOTIONS THAT NEEDED TO BE MADE.  I'VE TRIED -- AND

16 I THINK THE COURT KNOWS THIS ITSELF THAT I HAVE TRIED ON

17 SEVERAL OCCASIONS TO TRY AND GET MOTIONS IN FRONT OF THE

18 COURT, WHICH THE MOTIONS WERE SENT BACK, AND THEY WERE NOT

19 FILED.  IN ADDITION TO THAT, I HAVE ALSO TRIED TO FILE AN

20 APPEAL BACK IN DECEMBER.

21          SO I JUST WANTED THE COURT TO UNDERSTAND THAT

22 THERE ARE CERTAIN THINGS THAT -- CERTAIN ISSUES THAT I HAVE

23 THAT I BELIEVE ARE VERY PERTINENT TO THE CASE.  AND I HAVE

24 NOT HAD AN OPPORTUNITY TO PUT THOSE -- PUT THOSE ISSUES FOR

25 FORTH.  I'VE BEEN DOING RESEARCH ON MY OWN, AND I HAVE BEEN

```
 1   COMING UP WITH FACTUAL INFORMATION THAT I FEEL IS VERY
 2   IMPORTANT -- IMPORTANT TO THE CASE AND PERTINENT TO THE
 3   OUTCOME OF THE CASE.  AND I HAVE NOT BEEN ABLE TO HAVE A
 4   CHANCE TO PUT THAT BEFORE THE COURT.
 5          AND THE APPOINTED COUNSEL THAT THE COURT HAD --
 6   THE COUNSEL THAT COURT DID APPOINT FOR ME, MR. MEZA, ALSO
 7   REQUESTED WITH THE COURT BACK IN APRIL FOR FUNDING FOR
 8   COPIES OF DISCOVERY THAT THE COURT SHORTLY THEREAFTER
 9   DENIED.  SO THAT WAS IN APRIL OF THIS YEAR.
10          IN ADDITION, I BELIEVE MR. MEZA ALSO REQUESTED FOR
11   AN INVESTIGATOR WHICH WAS DENIED.  SO THESE THINGS CAME
12   ABOUT FAIRLY QUICKLY.  AND THE COURT REQUESTED THAT I
13   PROVIDE SOME TYPE OF FINANCING FOR THESE ITEMS.  AT THAT
14   TIME, I DID NOT HAVE THE MONEY TO DO SO.  I WASN'T EXPECTING
15   THESE EXPENSES TO COME UP.  AND AS THEY CAME -- AS THEY
16   AROSE, I WASN'T ABLE TO BE ABLE TO CONTRIBUTE.
17          I HAVE INFORMATION THAT I DO NEED TO GET TO THE
18   COURT.  I WOULD ASK THE COURT TO AT LEAST ALLOW ME AN
19   OPPORTUNITY TO HIRE COUNSEL THAT I MIGHT BE ABLE TO HAVE
20   PRESENT MY SIDE IN THE WAY THAT I BELIEVE IT'S NECESSARY TO
21   PUT A DEFENSE ON.  AND IN THE ALTERNATIVE, TO ALLOW ME THE
22   OPPORTUNITY TO AT LEAST FILE MOTIONS WHERE I CAN GET THE
23   FACTS THAT I HAVE DISCOVERED IN FRONT OF THE COURT, SO IT
24   CAN BE -- SO THAT THEY CAN BE ANALYZED.
25          THE COURT:  THE GOVERNMENT ATTORNEY FILED AN
```

1    OPPOSITION TO A MOTION FOR A TRIAL CONTINUANCE ON OCTOBER

2    THE 17TH AND OUTLINED THE CHRONOLOGY OF THE CASE GOING BACK

3    TO FEBRUARY OF 2003 AND MADE A FOOTNOTE THAT THERE WERE FOUR

4    CONTINUANCES IN THE CASE THAT WERE NECESSARY AS A RESULT OF

5    DEFENDANT FAILING TO RETAIN COUNSEL AS DIRECTED BY THE

6    COURT, CITING DOCKET ENTRY 64 TO 67.

7            SO THAT GOES WAY BACK TO THE BEGINNING.  THE CASE

8    WAS FIRST SET FOR TRIAL IN MARCH OF 2003.  THEN, THE TRIAL

9    DATE WAS CONTINUED SEVEN TIMES, AS RECOUNTED MARCH OF '03 TO

10   NOVEMBER 8TH OF '05, AND RECOUNTS WHAT YOU HAVE ALLUDED TO

11   WITH RESPECT TO THE COURT NEVER RECEIVING ANY FINANCIAL

12   INFORMATION FROM YOU, MR. BENNETT, THAT YOU WERE EITHER

13   UNABLE TO PAY FOR AN INVESTIGATOR OR FOR THE COPYING COST.

14           I GUESS MY QUESTION GOES BACK TO MY FIRST

15   QUESTION, WHICH IS:  DO YOU HAVE NEW COUNSEL TO REPRESENT

16   YOU FOR TRIAL ON NOVEMBER 8TH?

17           DEFENDANT BENNETT:  NO, I DON'T, YOUR HONOR.

18           I WAS -- I HAD MADE IN THAT MOTION TWO REQUESTS:

19   THE OPPORTUNITY TO SEEK NEW COUNSEL; OR IN THE ALTERNATIVE,

20   TO MOVE FORWARD AND HAVE AN OPPORTUNITY TO PRINT OUT --

21   PRESENT A DEFENSE THAT I FEEL IS APPROPRIATE.

22           I HAVE INFORMATION THAT I HAVE GOTTEN JUST WITHIN

23   THE WEEK THAT I HAVEN'T BEEN ABLE TO GET IN FRONT OF THE

24   COURT, AND I FEEL THAT NEEDS TO BE -- THE COURT NEEDS TO

25   ANALYZE SOME OF THIS INFORMATION, BECAUSE IT GOES DIRECTLY

1    TO THE MATERIALITY OF SOME OF THE ELEMENTS OF THE CRIME.

2    AND I CAN'T GET THAT IN FRONT OF COURT, BECAUSE I CAN'T

3    PRESENT MOTIONS BECAUSE THE COURT WON'T ACCEPT MOTIONS.

4            AND JUST BACKING UP, JUST A LITTLE BIT, IN REGARDS

5    TO THE AFFIDAVIT -- THE FINANCIAL AFFIDAVIT -- I DON'T KNOW

6    IF THE COURT REMEMBERS -- BUT AT THE TIME THAT I WAS ORDERED

7    TO GO DOWN TO THE FEDERAL DEFENDER'S OFFICE, I WAS TOLD TO

8    FILL OUT AN AFFIDAVIT, AND THAT WAS DONE THAT DAY.  SO THE

9    AFFIDAVIT THAT WE ARE REFERRING TO WAS DONE THE SAME DAY OR

10   THE DAY AFTER, AND IT'S BEEN ON FILE.

11           SO AS FAR AS THE AFFIDAVIT IS CONCERNED, I HAVE

12   LIVED UP TO MY SIDE OF THAT.  I DON'T KNOW IF THE COURT

13   REMEMBERS, BUT IT WAS ON FILE AND IT WAS -- THE FEDERAL

14   DEFENDER'S OFFICE HAS THAT FINANCIAL AFFIDAVIT.  AND I

15   ASSUMED THAT THE COURT LOOKED AT IT AND THAT WAS WHY THE

16   COURT APPOINTED MR. MEZA.  AND SO, TO COME THIS FAR IN THE

17   TRIAL PROCESS, YOU KNOW, THREE, FOUR MONTHS OUT AND TO FIND

18   OUT THAT THE COURT WAS UNWILLING TO PAY FOR COPIES AND

19   INVESTIGATORS AND SUBPOENAS, THAT SURPRISED ME AND PUT ME

20   ACTUALLY AT A DISADVANTAGE.  BECAUSE I NOW HAVE TO TRY TO

21   FIND -- LOCATE -- GET THAT KIND OF MONEY TOGETHER TO HAVE

22   THESE THINGS DONE, BUT I WOULD SAY TO THE COURT I AM NOT

23   WILLING TO DO THAT IF I AM NOT ABLE TO EXPRESS MY POINT OF

24   VIEW.  I AM NOT WILLING TO PAY FOR COPIES OR TO DO ALL OF

25   THOSE OTHER THINGS, IF I DON'T HAVE A VOICE IN IT.  I NEED

1    TO HAVE A VOICE.  I HAVE TO THIS POINT NOT BEEN ABLE TO

2    FORWARD MY VOICE IN THIS MATTER, OR TO PRESENT MY FACTS, OR

3    TO HAVE MY MOTIONS HEARD.  AND THAT'S --

4            I MEAN, MR. MEZA HAS PRESENTED WHAT HE FEELS IS

5    APPLICABLE AT CERTAIN POINTS.  HE HAS FILED MOTIONS, BUT

6    THOSE MOTIONS ARE MR. MEZA'S MOTIONS.  THEY DON'T

7    CHARACTERIZE WHAT I HAVE FOUND OUT AND THE ISSUES AND THE

8    FACTS THAT I HAVE IN MY POSSESSION.

9            THE COURT:  WE HAD COUNSEL APPOINTED FOR YOU,

10   BECAUSE YOU HAVE, IN ESSENCE, REFUSED TO GO HIRE YOUR OWN

11   ATTORNEY, MR. BENNETT.  AND I DON'T HAVE A FINANCIAL

12   AFFIDAVIT THAT SUGGESTS ANYTHING OTHER.  I JUST DON'T HAVE

13   AN AFFIDAVIT.  SO WHAT YOU MAY HAVE GIVEN TO SOMEBODY ELSE

14   IS NEITHER HERE NOR THERE.  AND, APPARENTLY, FROM WHAT

15   YOU'RE SAYING, THINGS HAVE CHANGED FOR YOU, IN ANY EVENT.

16   SO MAYBE THINGS HAVE CHANGED FOR YOU, BUT I JUST DON'T KNOW.

17   SO YOU ARE NOT UNDER OATH NOW AND YOU WEREN'T UNDER OATH

18   PREVIOUSLY, AND SO THE COURT MADE RULINGS BASED UPON WHAT IT

19   HAD BEFORE IT.

20           MR. MEZA'S MOTIONS ARE NOT MR. MEZA'S MOTIONS;

21   THEY ARE YOUR MOTIONS, MR. BENNETT.  THE MOTIONS HAVE

22   RECEIVED, AS YOU WELL KNOW, A LENGTHY SCRUTINY BY THE COURT.

23   I'M NOT GOING TO DELVE FURTHER WITH RESPECT INTO THE

24   RELATIONSHIP YOU HAVE WITH YOUR COUNSEL AT THIS POINT.  LET

25   ME JUST FIND OUT WHAT YOUR REQUEST IS AND THEN MR. SAGEL CAN

```
 1    TELL US WHAT HE MAY KNOW, IF ANYTHING, AS TO SOME OF THESE
 2    ITEMS THAT YOU HAVE MENTIONED.
 3              WAS THERE ANYTHING ELSE YOU WANTED TO ADD,
 4    MR. BENNETT?
 5              DEFENDANT BENNETT:  IN REGARDS TO THE FACTS THAT I
 6    HAVE UNCOVERED?  IS THAT WHAT WE ARE SPEAKING OF AT THIS
 7    POINT?
 8              THE COURT:  NO, THIS IS YOUR MOTION.  I JUST WANT
 9    TO MAKE SURE THAT YOU HAVE SET FORTH YOUR MOTION FULLY AND
10    COMPLETELY.
11              DEFENDANT BENNETT:  WELL, FIRST OF ALL, I GUESS
12    WHAT I WANT TO SAY IS THAT I HAVE BEEN GATHERING FACTS THAT
13    I HAVE NOT BEEN ABLE TO PRESENT TO THE COURT.  AND I TRIED
14    TO TELL MY COUNSEL WHAT IT IS THAT I HAVE, AND I STILL
15    DON'T --
16              I HAVE IN FRONT OF ME A PLEA AGREEMENT FOR
17    MR. FERNANDEZ THAT WAS SENT TO ME, OR GIVEN TO ME AS AN
18    EXHIBIT IN AN ACCUSATION DEPARTMENT OF -- CALIFORNIA
19    DEPARTMENT OF REAL ESTATE ACCUSATION AGAINST MY LICENSE.  IN
20    THAT PLEA AGREEMENT ON PAGE 5, IT HAS MR. FERNANDEZ PLEADING
21    GUILTY TO DEFRAUDING INDIE MAC BANG ON A PROPERTY AT
22    958 EAST SIGNAL HILL -- 958 EAST 25TH STREET, IN SIGNAL
23    HILL.  ON THAT SAME PARTICULAR PROPERTY, I JUST WENT THROUGH
24    A HEARING A WEEK AGO WHEN I GOT THIS DOCUMENT AND THE
25    CALIFORNIA DEPARTMENT OF REAL ESTATE HAS BEEN -- THEY HAVE
```

1   ME ACCUSED OF DEFRAUDING THIS SAME -- NOT THIS LENDER BUT

2   ANOTHER LENDER FOR THE SAME AMOUNT OF MONEY.  THEY HAD THE

3   CEO THERE THAT INDICATED THAT THEY LOST THE MONEY, AND HERE

4   WE HAVE MR. FERNANDEZ PLEADING GUILTY TO BANK FRAUD OF FUNDS

5   THAT WEREN'T -- THAT DIDN'T COME FROM THE BANK THAT THE

6   GOVERNMENT IS SAYING THAT THEY DID COME FROM.  THIS HAS BEEN

7   THE WHOLE ISSUE.  THE GOVERNMENT HAS BEEN CONCEALING THE

8   JURISDICTION TO GET THESE CHARGES IN FRONT OF THE GRAND JURY

9   AND THE CHARGES IN FRONT OF THE COURT HERE.  AND I DON'T

10  HAVE AN OPPORTUNITY TO SHOW WHAT I HAVE AND TO SHOW WHAT I

11  FOUND OUT OVER THE COURSE OF THE TIME THAT WE HAVE BEEN

12  INVOLVED IN THIS.

13          THE COURT:  ARE YOU TALKING ABOUT THINGS THAT YOU

14  WANT TO BE EXHIBITS IN FRONT OF THE JURY?

15          DEFENDANT BENNETT:  I'M TALKING ABOUT -- I'M

16  TALKING ABOUT THE INABILITY TO BRING FORTH MOTIONS THAT ARE

17  RELEVANT TO THESE EXHIBITS, YOUR HONOR.  I CAN'T EXPRESS --

18          TAKE, FOR INSTANCE, THE MOTION TO QUASH AND

19  TRAVERSE THE SEARCH WARRANT THAT WAS FILED LAST AUGUST,

20  AUGUST OF 2004.  THE MOTION DID NOT GO TO THE ACTUAL HEART

21  OF WHAT WAS -- THE FACTUAL HEART OF WHAT WAS GOING ON.  WHAT

22  WAS ACTUALLY HAPPENING WAS THAT SPECIAL AGENT RAWLINS WAS --

23  IN HIS AFFIDAVIT TO THE COURT TO GET THE SEARCH WARRANT OF

24  MY OFFICE AND MY HOME, HE NEGLECTED TO TELL THE COURT THAT

25  THE FLAGSTAR BANK WAS NOT THE FUNDING INSTITUTION AND THAT

1    FLAGSTAR BANK WASN'T THE LENDING INSTITUTION.  AND I THINK

2    IN YOUR HONOR'S -- WHEN YOU GAVE YOUR OPINION, I THINK THAT

3    WHAT YOU SAID IN THERE WAS THAT IS THAT YOU FOUND THAT TO BE

4    DISTURBING.  YOUR HONOR, IT'S MATERIAL TO THE ELEMENT OF THE

5    CRIME AND ITS MORE THAN DISTURBING.  IT'S PERJURY, AND IT'S

6    OBSTRUCTION OF JUSTICE.

7            THE COURT:  ALL RIGHT.  ANYTHING ELSE YOU WANT TO

8    TELL US ABOUT YOUR MOTION?

9            DEFENDANT BENNETT:  NOTHING OTHER THAN I WOULD

10   LIKE THE OPPORTUNITY TO AT LEAST PRESENT MY CASE AND AT

11   LEAST FILE MOTIONS THAT I BELIEVE ARE PERTINENT TO MY

12   DEFENSE.  VERY PERTINENT TO MY DEFENSE.

13           THE COURT:  ALL RIGHT.  WHY DON'T YOU TAKE A SEAT,

14   MR. BENNETT.  AND MR. SAGEL CAN SET THE RECORD STRAIGHT, IF

15   THERE IS ANYTHING CHRONOLOGICALLY MISSED OR OTHERWISE AND

16   THEN WE CAN COME BACK TO YOU.

17           MR. SAGEL:  THANK YOU, YOUR HONOR.

18           FIRST AND FOREMOST -- AND I DON'T KNOW IF THIS

19   REQUIRES ASKING MR. BENNETT A FOLLOW-UP QUESTION -- BUT I

20   GUESS I'M STILL UNCERTAIN OF, IF YOUR HONOR AND THIS COURT

21   IS NOT GOING TO GIVE HIM NEW COUNSEL, WHICH THE GOVERNMENT

22   DOES NOT BELIEVE HE'S ENTITLED TO, IS NOT APPROPRIATE IN

23   THIS CASE, IS HE -- HIS MOTION SEEMS TO SAY THEN HE WANTS TO

24   REPRESENT HIMSELF.  I'M NOT SURE IF THAT IS STILL THE

25   POSITION HE IS TAKING.  THAT'S A QUESTION THE GOVERNMENT

**EXHIBIT-C**

DATE 12/15/05 UNLICENSED AUSA SAGEL SPEAKS TO SPOTLITE 53

1   THEM IN A SIMPLISTIC FORM AS MAIL FRAUD.

2        WITH REGARDS TO THE OTHER -- WITH REGARDS TO ALL

3   25 PROPERTIES OR THE 15 THAT ARE NOT CHARGED, MORE OR LESS,

4   THE GOVERNMENT WILL BASICALLY BE RELYING ON MAIL FRAUD.  I

5   DON'T THINK IT'S EITHER LEGALLY REQUIRED OF THE GOVERNMENT

6   OR THERE IS ANY BASIS TO TELL THE GOVERNMENT OR TO TELL THE

7   JURY HOW TO CONFINE THE GOVERNMENT.  THE GOVERNMENT CHARGED

8   THIS -- THE GRAND JURY CHARGED THIS CASE AFTER HEARING THE

9   EVIDENCE, UNDER ONE OF THREE, BANK FRAUD, WIRE FRAUD, OR

10  MAIL FRAUD, OR THE LATTER TWO AFFECTING A FINANCIAL

11  INSTITUTION.  I DON'T KNOW ANY BASIS IN WHICH DEFENDANT

12  COULD LIMIT WHAT THE GOVERNMENT COULD ARGUE IF THE FACTS

13  PRESENTED, FOR EXAMPLE, TWO OF THE UNCHARGED COUNTS ARE

14  FUNDED BY EQUICREDIT.  I DON'T SEE -- IF WE WANTED TO, WE

15  ARE GETTING TO THE SAME PLACE, WHETHER WE USE MAIL FRAUD

16  AFFECTING A FINANCIAL INSTITUTION.  WE WOULD HAVE TO USE THE

17  SAME EVIDENCE FROM THE BANK FRAUD STATUTES OF EQUICREDIT,

18  BASICALLY, THAT IT'S FDIC CHARTERED OR A WHOLLY OWNED

19  SUBSIDIARY.  BUT I'M NOT SURE THAT THERE IS ANY BASIS IN

20  WHICH THE GOVERNMENT CAN BE CONFINED TO ONLY ONE OUT OF

21  THREE THEORIES WHEN THEY ARE ALL CHARGED IN THE INDICTMENT

22  AND THERE IS EVIDENCE TO SUPPORT ANY ONE OF THOSE THREE.

23        THE COURT:  THE DEFENDANT IS GOING BY WHAT COUNSEL

24  SAID AND THAT'S THE SAME THING I HEARD GOVERNMENT COUNSEL TO

25  SAY, WHICH WAS SUPPOSEDLY THAT WAS THE SIMPLE APPROACH TO

**EXHIBIT-D**

1   Jury Instruction No. 24 --

2           THE COURT:  Which you covered in your papers.

3           MR. BENNETT:  Yes, and which you denied -- I felt

4   that the Court had no jurisdiction to give that

5   instruction -- those two instructions or to allow the jury

6   to consider convictions in counts or charges that weren't

7   appearing in the Indictment the same way that --

8           THE COURT:  And so your papers indicate, sir.

9           MR. BENNETT:  So what we have here is Counts 5

10  through 10 which on the Indictment appear as bank fraud and

11  causing an act to be done, which bank fraud is Section 1344.

12  Causing an act to be done is Section (2)(b), and it's in the

13  conjunctive.  You gave jury instruction -- or Court

14  Instruction No. 7 to the jury.  You gave them a choice in

15  the disjunctive of selecting bank fraud, Section 1344, or

16  aiding and abetting bank fraud which is Section (2)(A).

17          THE COURT:  And so you indicated in your papers.

18          MR. BENNETT:  If we had no difference in the jury

19  instructions and the Indictment and since you have declined

20  my request for the verdict form, which I don't see any

21  reason why -- I would like to take a look at the verdict

22  form.

23          If there was no variance between the Indictment

24  and the jury instruction, then we would have no problem.  I

25  would think we wouldn't have a problem.  If the 25 counts

1  that you allowed the government to bring in during trial --

2  if that never occurred, I don't think we would have a

3  problem either, but you did.  You allowed 25 counts to come

4  in to this court, 25 counts.  We only started off with 12

5  counts in the Indictment.  Count 11 was dismissed.  That

6  left us with Counts 1 through 10 and Count 12.  I don't know

7  where the 25 counts came from.

8          I also do not know -- Jury Instruction or Court

9  Instruction No. 26, what are the properties and lenders that

10  Court instruction applies to.

11          So if you can answer those questions for me, and I

12  realize that you decline to provide me the verdict form on

13  all the charges.  I would once again request the verdict

14  form just so we know exactly what we are doing here and just

15  so that I know exactly what happened.

16          THE COURT:  Is there anything else?

17          MR. BENNETT:  If you could tell me exactly what

18  the convictions were?  The Court instructions were not --

19  did not match the Indictment, so I am trying to find out if

20  -- I just read your tentative on the sentencing.  I am

21  trying to find out what are the charges you plan to sentence

22  me on?  Is it going to be the indicted charges, or is it

23  going to be the charges that you told -- you gave

24  instructions to the jury on?

25          THE COURT:  Let me advise you that you are

1    entitled to take an appeal of the Court's judgment by filing

2    a Notice of Appeal within ten days from today's date, and if

3    you fail to file a Notice of Appeal within that time, there

4    will be no review of the Court's judgment.

5         Do you have questions about your right to appeal?

6         MR. BENNETT:  I think at this point I need an

7    attorney.  I am requesting assistance of a Court-appointed

8    attorney because you refuse to explain to me on the record

9    what the convictions are and what the violations are.  I

10   don't think I need to leave here without knowing that.

11        If you are going to give me a sentence to prison,

12   I think you have an obligation not only to this court but to

13   this government to tell me before I leave out of here.  The

14   Fifth Amendment demands that you tell me exactly what you

15   plan to sentence me on since you changed the charges from

16   what was indicted.

17        So I don't think it's something that you can tell

18   me that I need to finish and shut up and get moving.  I

19   think you need to do that, Your Honor, and I think that

20   justice demands it.

21        THE COURT:  Do you have any questions about your

22   right of appeal?

23        MR. BENNETT:  I am requesting at this point

24   Court-appointed counsel to complete this sentencing.

25        THE COURT:  Do you have any questions about your

**EXHIBIT—E**

We, the jury, in the above-entitled action, hereby unanimously FIND the following:

**PROPERTY**

| | FRAUD (MAIL) (WIRE) (BANK) | IDENTITY Of 3 PERSONS | MONEY DEFENDANT RECEIVED |
|---|---|---|---|
| 1.  2616 Griffith Ave., Los Angeles, CA | _____ | _____ | _____ |
| | | _____ | |
| 2.  760 E. 43rd Pl., Los Angeles, CA | _____ | _____ | _____ |
| | | _____ | |
| | | _____ | |
| 3.  615 W. Imperial Hwy., Los Angeles, CA | _____ | _____ | _____ |
| | | _____ | |
| | | _____ | |
| 4.  860 Cerritos Ave., Long Beach, CA | _____ | _____ | _____ |
| | | _____ | |
| | | _____ | |

1

**EXHIBIT A**

1

2

3

4

5.    245 W. 56th St.,

      Los Angeles, CA

5

6

7

6.    1412 W. 94th Pl.,

      Los Angeles, CA

8

9

10

11

7.    768 E. 43rd. Pl.,

      Los Angeles, CA

12

13

14

15

8.    1495 Alamitos Ave.,

      Long Beach, CA

16

17

18

19

9.    1105 Ohio Ave.,

      Long Beach, CA

20

21

22

23

10.  1304-1306 Junipero Ave.,

      Long Beach, CA

24

25

26

27

28

2

1  11. 9501 S. Western Ave.,

2        Los Angeles, CA

3        _____    _____    _____

4                    _____

5  12. 1519 W. 29th St.,        _____

6        Los Angeles, CA

7        _____    _____    _____

8                    _____

9  13. 1177 W. 38th St.,        _____

10       Los Angeles, CA

11       _____    _____    _____

12                   _____

13 14. 928 W. 78th St.,         _____

14       Los Angeles, CA

15       _____    _____    _____

16                   _____

17 15. 456 E. 40th Pl.,         _____

18       Los Angeles, CA

19       _____    _____    _____

20                   _____

21 16. 2253 Linden Ave.,        _____

22       Long Beach, CA

23       _____    _____    _____

24                   _____

25                   _____

26

27

28                   3

17.  1485-1489 Molino Ave.,

     Long Beach, CA

18.  1104-1106 ½ W. 87th St.,

     Los Angeles, CA

19.  1017 Raymond Ave.,

     Long Beach, CA

20.  930 E. 11th ST.,

     Long Beach, CA

21.  428 W. 5th St.,

     Long Beach, CA

22.  520 Chestnut Ave.,

     Long Beach, CA

23. 7819 S. Hoover St.

   Los Angeles, CA    _____  _____  _____

                               _____

                               _____

24. 1495 Alamitos Ave.,

   Long Beach, CA    _____  _____  _____

                               _____

                               _____

25. 2121 Atlantic Ave.,

   Long Beach, CA    _____  _____  _____

                               _____

                               _____


Foreperson _____

Date: _____

5